

## IN THE CIRCUIT COURT
## OF MONTGOMERY COUNTY, ALABAMA
## CIVIL DIVISION

|  |  |
|---|---|
| **RONALD P. HAYDEN** | ) |
| **and** | ) |
| **MELISSA LONG HAYDEN** | ) |
| **Plaintiff** | ) |
|  | ) |
| **v.** | ) **CASE NO.: CV-2006-_____** |
|  | ) |
| **ALABAMA DEPARTMENT OF** | ) |
| **PUBLIC SAFETY; W. M. COPPAGE;** | ) |
| **DANNY HESTER; HERMAN** | ) |
| **WRIGHT; BYRON D. "PETE"** | ) |
| **PRESCOTT; NEIL TEW; MICHAEL** | ) |
| **ROBINSON; and,** | ) |
| **UNKNOWN DEFENDANTS A-K** | ) |
|  | ) |
| **Defendants** | ) |

## COMPLAINT

### JURISDICTION AND VENUE

1)    Jurisdiction of this Court is proper pursuant to Section 12-11-30 *et seq.,*
*Code of Alabama 1975*; and 42 U.S.C. § 1983.

2)    Venue is proper in this Court in that all parties hereto are residents or
entities of the state of Alabama, and all acts complained of herein occurred in the county
of Montgomery, Alabama.

### PARTIES

3)    Plaintiff Ronald Hayden is of more than nineteen years of age, a resident
of Baldwin County, Alabama, and, was, at all times relevant to this action, an employee
of the Alabama Department of Public Safety (DPS), in Montgomery, Alabama.

4)    Plaintiff Melissa Long Hayden is of more than nineteen years of age, a
resident of Baldwin County, Alabama, and is the spouse of plaintiff Ronald Hayden.

5)     Defendant Alabama Department of Public Safety is an agency of the State of Alabama, and is sued herein for injunctive relief only.

6)     Defendant Colonel W. M. Coppage is the director of the Alabama Department of Public Safety, and is sued in both his official and individual capacity for actions taken under the color of state law.

7)     Defendant Herman Wright is or was a sworn officer employed by the Alabama Department of Public Safety, and is sued in his individual capacity only for acts taken under the color of state law.

8)     Defendant Danny Hester is or was a sworn officer employed by the Alabama Department of Public Safety, and is sued in his individual capacity only for acts taken under the color of state law.

9)     Defendant Byron D. "Pete" Prescott is or was a sworn officer employed by the Alabama Department of Public Safety, and is sued in his individual capacity only for acts taken under the color of state law.

10)     Defendant Neil Tew is or was a sworn officer employed by the Alabama Department of Public Safety, and is sued in his individual capacity only for acts taken under the color of state law.

11)     Defendant Michael Robinson is or was an assistant attorney general serving as counsel for the Alabama Department of Public Safety, and is sued in his individual capacity for acts taken under the color of state law.

12)     Defendants "A" through "K" are individuals whose identities are unknown to the plaintiff at this time but are believed to be participants and co-conspirators in the

wrongful acts perpetrated against him. The plaintiffs will substitute the actual names of these defendants as their identities become known to them.

## FACTS

13)    Ronald Hayden began his service as a sworn officer of the Alabama Department of Public Safety in or about the year of 1985.

14)    On or about the date of November 2, 2002, Ron Hayden was asked by Bob and Patsy Riley to serve as a full-time security officer for Bob Riley if Riley won the governorship of Alabama. Hayden agreed, and on or about the date of November 4, 2002, he was assigned by the Alabama Department of Public Safety to serve as a full-time security agent for Bob Riley. This assignment continued throughout the time the 2002 gubernatorial election result was contested, and after Bob Riley was inaugurated as governor. Hayden performed his duties in an exemplary manner and earned "exceeds standards" ratings on his performance evaluations.

15)    On or about the date of September 8, 2004, Hayden was informed verbally by Captain Herman Wright that he was the subject of an investigation by the Standards and Integrity Unit (SIU) of the Alabama Department of Public Safety. Captain Wright was the officer in command of the SIU.

16)    Hayden was subsequently provided with a memorandum dated September 8, 2004, and signed by Colonel W. M. Coppage which stated that he was under investigation by the SIU for "misconduct and conduct unbecoming in that a review of DPS documentation revealed numerous discrepancies in work hours claimed, travel claims, and vehicle usage." The memo also directed Hayden that he was not to contact anyone regarding these charges or to discuss the charges with anyone; and, that he would

be allowed an opportunity to present facts, evidence and witnesses during the investigation. Colonel Coppage was, and is, the Director of the Alabama Department of Public Safety.

17)   Hayden also received a memorandum from Captain Wright, dated September 9, 2004, which informed him: a) he was the subject of an active complaint investigation; b) he was directed to attend an administrative interview on 9/10/04; c) the failure to attend would result in disciplinary action; and, d) he was "ordered not to discuss this case or investigation with anyone unless authorized to do so by the SIU or the Director."

18)   Hayden was directed to meet with Col. Coppage on or about September 23, 2004 at which time he was told that he was being placed on ten days mandatory annual leave while he was being investigated. At the conclusion of this first mandatory leave period, Hayden was required to turn in his weapons, badge, and identification and was further required to take two additional involuntary ten-day "mandatory" annual leaves.

19)   Neil Tew, acting chief of the Executive Protection Division, informed Hayden in a letter dated October 1, 2004 that he concurred with Sgt. Prescott, Hayden's immediate supervisor, that Hayden should be terminated due to numerous incidents of falsified documents that rose to the level of serious misconduct and conduct unbecoming to an officer. Hayden was subsequently notified by Col. Coppage that his employment with the Alabama Department of Public Safety was terminated effective November 4, 2004.

20)     Defendants Coppage, Wright, Hester and Tew initiated and carried out their investigation of Hayden in an arbitrary and unreasonable manner; other sworn officers of the DPS were not subjected to investigation and scrutiny of their work hours, travel claims and vehicle usage in the same manner by them as was Hayden.

21)     Hayden had been required to turn in his weapons, badge and law enforcement identification on or about the date of October 8, 2008.  On November 10, 2004, Col. Coppage submitted a POST-8 form to the Alabama Peace Officers Standards and Training Commission that Hayden's employment had been terminated for "falsifying documents".  As a consequence, Hayden was unable to be employed in his life-long career of law enforcement.

22)     On or about the date of October 20, Col. Coppage, or others acting on his behalf, issued a press release which accused Hayden of falsifying reports, travel vouchers and misuse of state vehicles.  This information, which was false and defamatory, was reported in the major media of the state and caused great personal humiliation, embarrassment and damage to the reputation of Hayden.

23)     Ronald and Melissa Hayden borrowed money so that Hayden could purchase credit with the Alabama Retirement Systems for two years of his military service.  This would enable Hayden to qualify for "retirement" from state employment and to have some means of income.  Robinson refused to certify Hayden's time-in-service and earnings to the Alabama Retirement Systems; he eventually was placed on a "conditional" retired status in January 2005.

24)     Hayden secured the services of an attorney and appealed his termination of employment to the Alabama State Personnel Board.  The Alabama Department of

Public Safety responded to this appeal by bringing eighty-three discrete charges of misconduct against Hayden. Coppage, or others under his control and at his direction, arbitrarily and unreasonably included a number of charges of misconduct in this response which were not included in the investigation which formed the pretext for their termination of his employment.

25)    Following a three-day hearing before an administrative law judge, all eighty-three charges were found to be unsubstantiated. The Alabama State Personnel Board voted unanimously to overturn Hayden's termination on November 21, 2005, and ordered him to be reinstated within ten days with all accrued pay and benefits.

26)    Coppage and Robinson refused to reinstate Hayden to his prior position of employment. Instead they required him to sign requests for annual leave and informed his attorney that he should not report to work and that he would not be "considered to have abandoned his job" for not reporting. Robinson informed Hayden that he should retire by February 1, 2006, if he could.

27)    Subsequent to the filing of the notice of appeal of Hayden's termination, Col. Coppage and Robinson made requests to the Alabama Ethics Commission and the Alabama Attorney General's office that Hayden should be prosecuted for the charges of misconduct which they had presented to the State Personnel Board. Even though Hayden has been cleared of these false and malicious charges, Col. Coppage and Robinson have not withdrawn their requests for prosecution of Hayden.

28)    Coppage and Robinson, or others working on their behalf, utilized their official position to instigate an action with the Alabama Department of Public Examiners

to require Hayden to re-pay the state for expenses and charges which had been already been adjudicated as unfounded by the State Personnel Board.

29)     The defendants deliberately acted to prevent the order of the State Personnel Board from being carried out, including reinstatement and restoration of pay and benefits; have deliberately failed to take any action to clear Hayden's name or repair the damage done to his reputation; have deliberately refused to take action to restore his weapons, badge and status as a sworn law enforcement officer; and, continue to subject him to the loss of income and other benefits.

## COUNT ONE
(Equal Protection-Section 1983)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 29 as if fully rewritten herein and further states:

30)     The Defendants, acting under the color of state law, intentionally deprived Hayden of his rights to equal protection under the law in one or more of the following ways:

a. They caused him to be investigated and disciplined arbitrarily, treating him differently than other DPS employees for reasons unrelated to a legitimate government objective; and/or,

b. They caused him to be investigated and terminated, maliciously subjecting him to differential treatment which was arbitrary and capricious, under the color of their authority as state actors; and/or,

c. They arbitrarily and willfully refused to reinstate him to his position of employment following the action of the State Personnel Board which overturned their wrongful termination of him.

31)     As a result of the Defendants' conduct set forth above, Hayden is entitled to equitable compensatory and declaratory relief, damages for emotional and mental distress, and reasonable attorney's fees and costs.

32)     Additionally, Hayden states that Defendants acted intentionally, maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights in their unequal treatment of him; and for such conduct, Defendants are liable for punitive damages in such amount as the jury may decide.

### COUNT TWO
(Stigma-Plus Due Process-Section 1983)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 32 as if fully rewritten herein and further states:

33)     The Defendants intentionally deprived Hayden of liberty rights without due process as guaranteed under the 14th amendment of the United States Constitution, to wit:

a. They published, or caused to be published, false and damaging statements regarding Hayden which deprived him of his liberty interest in his reputation for good character; and,

b. They deprived him of his employment and his opportunities for future employment without due process as guaranteed under law.

c. They have refused to clear his name in the same manner and to the same degree as they sought to damage his reputation, even though their claims against him have been adjudicated to be without grounds.

34)     As a result of the Defendants' conduct set forth above, Hayden is entitled to equitable compensatory and declaratory relief, damages for emotional and mental distress, and reasonable attorney's fees and costs.

35)     Additionally, Hayden states that Defendants acted intentionally, maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights; and for such conduct, Defendants are liable for punitive damages in such amount as the jury may decide.

## COUNT THREE
### (Retaliation)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 35 as if fully rewritten herein and further states:

36)     The Defendants have perpetrated, condoned and permitted adverse actions against Hayden on account of and on account of his opposition to their unlawful activities.  Hayden opposed these unlawful discriminatory practices by the Defendants. Defendants retaliated against Hayden with respect to the terms, conditions and privileges of employment because of his opposition to these unlawful practices in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution of the United States of America for which Defendants are liable.

37)     As a result of the Defendants' conduct set forth above, Hayden is entitled to equitable compensatory and declaratory relief, damages for emotional and mental distress, and reasonable attorney's fees and costs.

38)     Additionally, Hayden states that Defendants acted intentionally, maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights, in retaliating against him for his opposition to their unequal treatment of him; and for such

conduct, Defendants are liable for punitive damages in such amount as the jury may decide.

## COUNT FOUR
(Section 1985)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 38 as if fully rewritten herein and further states:

39)    Plaintiff was subjected to adverse treatment which was not afforded to other sworn officers of the DPS as a result of a conspiracy between the Defendants in violation of 42 U.S.C. § 1985. Each of the Defendants has conspired and agreed between themselves for the purpose of depriving, either directly or indirectly, Hayden of the equal protection of the laws, or of equal privileges and immunities under the laws; or to impede, hinder, obstruct, or defeat the due course of justice, with the intent to deny Hayden the equal protection of the laws; or to injure Hayden for lawfully enforcing, or attempting to enforce his rights to equal protection of the laws; and, have conspired and agreed to inflict such harassment upon him.  Each individual Defendant has taken an act in furtherance of the conspiracy and Hayden has been injured in his person and property, and has been deprived of rights and privileges secured to citizens of the United States.

40)    Defendants reached an understanding, engaged in a sequence of events or course of conduct, and otherwise agreed and conspired together to violate the rights of Hayden. These Defendants did reach this understanding and agreement, and did engage in this course of conduct with the mutual purpose, objective, and knowledge that it would deprive Hayden of his rights, privileges, and immunities as guaranteed by the laws of the United States, and by the First and Fourteenth Amendments to the United States Constitution.

41)    Acting in furtherance of this plan and conspiracy, the Defendants did commit overt acts to otherwise retaliate and discriminate against Plaintiff in the terms and conditions of his employment; all to Hayden's damage.

42)    As a result of the Defendants' conduct set forth above, Hayden is entitled to equitable compensatory and declaratory relief, damages for emotional and mental distress, and reasonable attorney's fees and costs.

43)    Additionally, Hayden states that Defendants acted intentionally, maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights, in retaliating against him for his opposition to their unequal treatment of him; and for such conduct, Defendants are liable for punitive damages in such amount as the jury may decide.

## COUNT FIVE
### (Defamation/Defamation *Per Se*)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 43 as if fully rewritten herein and further states:

44)    The Defendants published or caused to be published false and defamatory statements concerning Hayden, to wit, that he had falsified documents and improperly utilized state vehicles and had committed other acts of moral turpitude.

45)    The statements made by the Defendant were defamatory per se in that they constituted an accusation that Hayden was guilty of a crime involving moral turpitude, to wit, theft of state funds, and were made with actual knowledge that said statements were false, or with reckless disregard for their truth or falsehood.

46) As a direct and proximate result of said defamatory statements, Hayden has been caused to suffer embarrassment, humiliation, loss of good name and reputation, mental anguish and suffering, and other damages.

47) The defendants have notice of the harm done thereby, and have refused to retract or otherwise withdraw the false and defamatory statements made by them

48) Hayden demands judgment against the defendants on this count in such amount as the jury may find proper as compensatory damages and for mental and emotional distress. Plaintiff additionally demands an award of punitive damages in such amount as sufficient to deter the Defendant and those similarly situated from such wanton and reckless conduct in the future.

## COUNT SIX
(Conspiracy – State Law)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 48 as if fully rewritten herein and further states:

49) This is an action brought pursuant to the law of the State of Alabama for conspiracy to commit the torts described herein.

50) Defendants combined, agreed, and conspired between themselves to commit the unlawful acts alleged herein.

51) Defendants' actions were willful and with malice, and as a proximate result, caused injury and damage to Plaintiff.

52) As a result of the Defendants' conduct set forth above, Hayden is entitled to equitable compensatory and declaratory relief, damages for emotional and mental distress, and Defendants' are liable for punitive damages in such amount as determined by the jury.

## COUNT SEVEN
(Loss of Consortium)

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 52 as if fully rewritten herein and further states:

53)     Plaintiff Melissa Long Hayden claims that the Defendants by their wrongful acts caused her the loss of the consortium and services of her husband, including but not limited to, love, companionship, affection, society, comfort, solace, support, sexual relations and other services.

54)     As a result of the Defendants' conduct set forth above, Plaintiff is entitled to equitable compensatory relief, damages for emotional and mental distress, and Defendants' are liable for punitive damages in such amount as determined by the jury.

THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.

Respectfully submitted this 16th day of September 2006.

_____ /S/ **JIMMY JACOBS**_____
JIMMY JACOBS (JAC051)
Attorney for Plaintiffs
143 Eastern Boulevard
Montgomery, Alabama 36117
(334) 215-1788