## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **RONALD P. HAYDEN, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 2:06cv948-ID** |
| | )  **(WO)** |
| **ALABAMA DEP'T OF PUBLIC SAFETY,** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Plaintiff Ronald P. Hayden filed this employment discrimination lawsuit pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that Defendants violated his liberty interests protected by the Fourteenth Amendment's Due Process Clause, infringed upon his Fourteenth Amendment right to equal protection by treating him differently than other similarly-situated employees, and retaliated against him in violation of the First Amendment.  He also alleges infractions of various state laws.  Plaintiff Melissa L. Hayden joins her husband in this lawsuit.[1]  Plaintiff sues the following Defendants:  (1) the Alabama Department of Public Safety ("ADPS"), the agency which employed Plaintiff; (2) Colonel W. M. Coppage ("Colonel Coppage"), the director of the ADPS; (3) Captain Herman Wright ("Captain Wright"), the ADPS officer in command of the Standards and Integrity Unit; (4) Danny

---

[1] Because Plaintiff Melissa L. Hayden asserts only a derivative claim for loss of consortium, further references in this opinion to "Plaintiff" refer to Ronald P. Hayden.

Hestor ("Officer Hestor"), an ADPS sworn officer; (5) Sergeant Byron D. "Pete" Prescott ("Sergeant Prescott"), an ADPS sworn officer; (6) Neil Tew ("Officer Tew"), acting chief of the Executive Protection Division; and (7) Defendant Michael Robinson ("Mr. Robinson"), the assistant attorney general who served as legal counsel for the ADPS. Colonel Coppage is sued in both his individual and official capacities; the remaining individual Defendants are sued only in their personal capacities.

Defendants have filed a collective motion to dismiss which now is before the court for a decision. (Doc. No. 1.) As grounds for their motion, Defendants raise failure to state a claim and absolute/qualified immunity as defenses. Plaintiff filed a response in opposition to the motion. (Doc. No. 12.) Accepting the facts in the complaint as true and reviewing them most favorably to Plaintiff, the court finds that Defendants' motion to dismiss is due to be granted as to some claims, and denied as to others.

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for all claims arising under federal law. The court also has original jurisdiction over claims based upon violations of civil rights. See 28 U.S.C. § 1343. Pursuant to 28 U.S.C. § 1367, the court has supplemental jurisdiction over the state-law claims. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations of both.

### III.  STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint because the plaintiff has failed to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true.  See, e.g., United States v. Gaubert, 499 U.S. 315, 327 (1991); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).  Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff.  See, e.g., Brower v. County of Inyo, 489 U.S. 593, 598 (1989).

Rule 8(a)(2) of the Federal Rules of Civil Procedure generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion.  See Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S.Ct. 1955, 1964-65 (2007).  In 42 U.S.C. § 1983 actions, however, where government officials sued in their individual capacities may be entitled to qualified immunity, the Eleventh Circuit has "tightened" the pleading requirements.  GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998); see also Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (recognizing that, in the Eleventh Circuit, a complaint must be pleaded with "heightened specificity . . . in civil rights actions against public officials who may be entitled to qualified immunity").  Accordingly, in determining whether a plaintiff has stated a § 1983 claim against a defendant in his or her individual capacity, courts must be "guided both by

3

the regular 12(b)(6) standard and by the heightened pleading requirement."  <u>GJR</u>

<u>Investments</u>, 132 F.3d at 1367.

Moreover, in the context of a Rule 12(b)(6) assertion of qualified immunity, "[u]nless

the plaintiff's allegations state a claim of violation of clearly established law, a defendant

pleading qualified immunity is entitled to dismissal before the commencement of

discovery."  <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985).  As explained in <u>Marsh v. Butler</u>,

"The Supreme Court has urged [courts] to apply the affirmative defense of qualified

immunity at the earliest possible stage in litigation because the defense is immunity from

suit and not from damages only."  268 F.3d 1014 (11th Cir. 2001), <u>implicitly modified on</u>

<u>other grounds by</u> <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002).  This circuit, therefore, has

recognized that, "[w]hile the defense of qualified immunity is typically addressed at the

summary judgment stage of a case, it may be . . . raised and considered on a motion to

dismiss."  <u>St. George v. Pinellas County</u>, 285 F.3d 1334, 1337 (11th Cir. 2002).


## IV.  FACTS

The facts in the complaint, which are taken as true for present purposes, are as

follows.[2]  Plaintiff began his employment as a "sworn officer" with the ADPS in 1985.

(Compl. ¶ 13.)  In 2002, at the request of Governor Bob Riley, who at the time was a

---

[2] This statement of facts may not represent the actual facts.  <u>See</u> <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1355 & n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be the actual facts.").

4

candidate in the 2002 Alabama gubernatorial election, Plaintiff was assigned by the ADPS to serve as a full-time security agent for Governor Riley.  (Id. ¶ 14.)  Plaintiff began his security duties for Governor Riley in November 2002.  (Id.)

In September 2004, notwithstanding that Plaintiff received "exceeds standards" ratings on his performance evaluations, Captain Wright verbally informed Plaintiff that he was under investigation by the ADPS Standards and Integrity Unit ("SIU").  (Id. ¶ 15.)  The same day, Plaintiff received a memorandum signed by Colonel Coppage stating that the SIU investigation was based upon the following charges:  "misconduct and conduct unbecoming in that a review of the ADPS documentation revealed numerous discrepancies in work hours claimed, travel claims, and vehicle usage."  (Id. ¶ 16.)  Two days later, also by memorandum, Colonel Coppage notified Plaintiff that, in connection with the charges lodged against him, Plaintiff was scheduled to attend a mandatory administrative interview. After Plaintiff's interview, Colonel Coppage placed Plaintiff on ten days mandatory annual leave.  (Id. ¶¶ 17-18.)

The following month, in October 2004, Plaintiff was informed in a letter from Officer Tew, the acting chief of the Executive Protective Division, that Plaintiff's immediate supervisor (Sergeant Prescott) recommended that the ADPS fire Plaintiff based upon the "numerous incidents of falsified documents that rose to the level of serious misconduct and conduct unbecoming to an officer."  (Id. ¶ 19.)  Officer Tew indicated that he concurred with Sergeant Prescott's recommendation.  (Id.)  Subsequently, Colonel Coppage notified

Plaintiff that his employment with the ADPS was terminated effective November 4, 2002.
(Id.)

Prior to Plaintiff's termination (on or about October 20), Colonel Coppage issued a
press release which accused Plaintiff of falsifying reports and travel vouchers and misusing
state vehicles.  (Id. ¶ 22.)  Plaintiff states that "[t]his information, which was false and
defamatory, was reported in the major media of the state and caused great personal
humiliation, embarrassment and damage to [his] reputation."  (Id.)  During this same time
frame, Colonel Coppage and Mr. Robinson also requested the Alabama Ethics Commission
and the Alabama Attorney General's office to prosecute Plaintiff for the charges of
misconduct.  (Id. ¶ 27.)  Then, after Plaintiff's termination, on November 10, 2004, Colonel
Coppage submitted a Post-8 form to the Alabama Peace Officers Standards and Training
Commission that Plaintiff's employment had been terminated for "falsifying documents,"
which had the effect of precluding Plaintiff from being employed in Alabama as a law
enforcement officer.  (Id. ¶ 21.)

Plaintiff hired an attorney and appealed his termination to the Alabama State
Personnel Board ("Personnel Board").  Responding to Plaintiff's appeal, Colonel Coppage
"or others under his control and at his direction" added charges of misconduct which were
not part of the initial investigation against Plaintiff.  (Id. ¶ 24.)  An administrative law judge
held a three-day hearing on Plaintiff's appeal and found that all of the charges lodged against
Plaintiff were "unsubstantiated."  (Id. ¶ 25.)  On November 21, 2005, the Personnel Board
"voted unanimously to overturn [Plaintiff's] termination . . ., and ordered him reinstated

within ten days with all accrued pay and benefits."  (Id. ¶ 26.)  Notwithstanding the decision by the Personnel Board, Colonel Coppage and Mr. Robinson refused to reinstate Plaintiff to his position, and Mr. Robinson urged Plaintiff to retire.  (Id.)  Colonel Coppage and Mr. Robinson also "instigate[d] an action with the Alabama Department of Public Examiners to require [Plaintiff] to re-pay the state for expenses and charges which had . . . already been adjudicated as unfounded by the State Personnel Board."  (Id. ¶ 28.)

Plaintiff commenced this lawsuit on September 16, 2006, in the Circuit Court of Montgomery County, Alabama.  Defendants timely removed this action pursuant to 28 U.S.C. § 1441(b).  The complaint contains seven counts.  In Counts One, Two and Three, which are brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses and the First Amendment.  Count Four contains conspiracy allegations, pursuant to 42 U.S.C. § 1985. (Id. at 7-11.)  Counts Five and Six assert state-law causes of action for defamation and conspiracy.  (Id. at 11-12.)  Count Seven is Plaintiff Melissa L. Hayden's claim for loss of consortium.  (Id. at 13.)


## V.  DISCUSSION

A.  The Federal- and State-Law Claims against the Alabama Department of Public Safety

Defendants contend that Plaintiff's 42 U.S.C. §§ 1983 and 1985 causes of action are due to be dismissed against the ADPS based on the Eleventh Amendment and for the

additional reason that this entity is not a "person" within the meaning of §§ 1983 and 1985. (See Defs. Mem. at 1.)

In this removed lawsuit, the issue of whether the ADPS may rely on Eleventh Amendment immunity does not appear to be as clear cut as the ADPS makes it out to be.  As set out in the footnote below, however, the court need not decide this case on Eleventh Amendment grounds because a statutory basis for dismissal exists.[3]  Apart from the Eleventh Amendment, 42 U.S.C. § 1983 does not permit a state agency to be directly sued.  Only a

---

[3] An issue presented by the facts of this case, but not explored by the parties, is whether the ADPS waived its Eleventh Amendment immunity by removing this case to federal court.  See Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring) (observing that the Court has "neither reached nor considered the argument that, by giving its express consent to removal of the case from state court, Wisconsin waived its Eleventh Amendment immunity").  In Lapides v. Board of Regents of the University System of Georgia, the Supreme Court held that, where the State has abrogated immunity from state-law lawsuits in state court, the State also waives its state sovereign immunity when it removes state-law causes of action from state to federal court.  See 535 U.S. 613 (2002).  The Lapides lawsuit also contained a 42 U.S.C. § 1983 claim, but the Court did not decide whether the State's removal also constituted an Eleventh Amendment waiver as to this federal claim.  Instead, the Court disposed of the § 1983 claim on statutory grounds when it concluded that the § 1983 claim was not "a valid federal claim" because a State is not a "person" within the meaning of § 1983.  See id. at 617; see also Vermont Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 779 (2000) (stating that "the question whether the statute itself permits the cause of action it creates to be asserted against States" is "'logically antecedent to the existence of' the Eleventh Amendment question" and that, therefore, it is "appropriate[] to decide the statutory issue first") (emphasis in original).  This court decides Plaintiff's § 1983 claims against the ADPS on the same grounds as Lapides.

"person" can be held liable under § 1983.[4]  See 42 U.S.C. § 1983.  In Will v. Michigan, the Supreme Court held that neither a state nor a governmental entity which is considered an "'arm[] of the state'" qualifies as a "person" under § 1983.  491 U.S. 58, 63-70 (1989).  The status of the ADPS as an arm of the State of Alabama is not challenged.  See Ala. Code § 32-2-1 (1975) (creating the ADPS); see also Manders v. Lee, 338 F.3d 1304, 1308, 1309 (11th Cir. 2003) (en banc) (setting forth factors to consider in determining whether an entity is an arm of the state).  Applying Will to the facts of this case, the court finds that the ADPS is not a "person" under § 1983.

The court reaches the same conclusion on Plaintiff's 42 U.S.C. § 1985 claims in Count Four against the ADPS.  Subsections (2) and (3) of § 1985 apply when "two or more persons" conspire to deprive any person of equal protection of the laws.[5]  Other courts have concluded that the term "person" as used in § 1985 has the same meaning as "person" under § 1983, and this court finds that these courts' interpretation is persuasive.  See Small v.

_____

[4] Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added).

[5] The court notes that Count Four does not identify a specific subsection of § 1985 (see Compl. at 10), but the allegations track the statutory language in subsections two and three.  See 42 U.S.C. § 1985(2) & (3).

9

Chao, 398 F.3d 894, 898 (7th Cir. 2005) (holding that plaintiff could not "assert a § 1983 action against [a state agency], for the simple reason that, as part of the State of Illinois, it is not a 'person' within the meaning of § 1983" and that "[a]ny possible claim under § 1985 is doomed for the same reason"); Sturdza v. United Arab Emirates, 281 F.3d 1287, 1307 (D.C. Cir. 2002) (explaining that a defendant which is not a "person" under § 1983 also is not a "person" under § 1985 because §§ 1983 and 1985 "are interpreted consistently with each other"); Rode v. Dellarciprete, 617 F. Supp. 721, 723 n.2 (M.D. Pa. 1985) (finding that "[u]nder §§ 1983 and 1985, the term 'persons' has the same meaning"); Coggins v. McQueen, 447 F. Supp. 960, 963-64 (D.C. Pa. 1978) (concluding that "because of the common historical derivation of 42 U.S.C. §§ 1983, 1985 and 1986," an entity which is not a "person" under § 1983 also is not a "person" under §§ 1985 and 1986); DaVinci v. Missouri, No. 06-068-AS, 2006 WL 1515536, *3 (D. Or. May 30, 2006) (finding that "[a]s with the analysis regarding § 1983, plaintiffs invalidly brought claims under § 1985 against . . . state agencies, who are not "persons" described in this statute) (citing Will, 491 U.S. at 64).  Based upon the foregoing authorities, the court finds that the ADPS is not a "person" which may be sued under § 1985.

Without citing any authority, Plaintiff argues that "the current state of the law is that a state may not be sued for damages, but may be sued for declaratory or injunctive relief" under §§ 1983 and 1985.  (Doc. No. 3 at 2-3.)  Because Plaintiff sues the ADPS for "injunctive relief only," (Compl. ¶ 5), Plaintiff contends that his §§ 1983 and 1985 claims against the ADPS survive the motion to dismiss.  The court recognizes, as Plaintiff points

out, that a government official is a "person" under § 1983 when sued in his or her official capacity for prospective declaratory or injunctive relief, see Will, 491 U.S. at 71 n.10 (citing Ex parte Young, 209 U.S. 123, 159-60 (1908)), and that such a suit can have the same result as if it were brought against the State itself.  Nonetheless, the exception in Will does not apply to suits brought directly against a state agency.  The ADPS simply is not a proper party for purposes of Plaintiff's claims brought pursuant to §§ 1983 and 1985.  Cf. Graves v. Stone, 25 Fed. Appx. 488, *1 (8th Cir. 2002) (finding no merit to plaintiff's assertion that the Ex parte Young exception which permits injunctive relief suits against state officials sued in their official capacities "somehow makes the [state agency] a defendant in this case").

Defendants also are correct that the ADPS is entitled to absolute sovereign immunity pursuant to Article I, § 14 of the Constitution of Alabama, 1901.  See Ex parte Walley, 950 So. 2d 1172, 1178 (Ala. 2006).  The ADPS, thus, is immune from suit on the state-law claims.  Consequently, the court finds that Defendants' motion to dismiss all claims brought against the ADPS is due to be granted.


B.  The Federal-Law Claims against Colonel Coppage in His Official Capacity

Defendants move for dismissal of the federal-law claims asserted against Colonel Coppage in his official capacity for money damages.  (See Defs. Mot. at 2.)  Defendants are correct that a state official in his or her official capacity is not a "person" within the meaning of § 1983.  Will's holding, discussed supra, also extends to state officials sued in their official capacities.  See Will, 491 U.S. at 71 ("a suit against a state official in his or her

11

official capacity is not a suit against the official but rather is a suit against the official's office[,] and, "[a]s such, it is no different from a suit against the State itself"); Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995) ("A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable[.]").  Plaintiff, however, responds that he is not seeking money damages from Colonel Coppage in his official capacity under federal statutes.  He concedes that money damages are sought only against the individual Defendants in their personal capacities.  To the extent that it is unclear from the complaint that money damages are not sought from Colonel Coppage in his official capacity under federal statutes, the court accepts Plaintiff's representation.  (Pl. Resp. at 5.)  Defendants' argument, thus, is moot.

C.   42 U.S.C. § 1983 Constitutional Claims against the Individual Defendants and Qualified Immunity

The individual Defendants raise qualified immunity as a defense to the federal-law constitutional claims asserted against them in their personal capacities for money damages under 42 U.S.C. § 1983.[6]  A government official may raise qualified immunity as an affirmative defense to a § 1983 individual-capacity lawsuit.  See Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998); see also Hill v. DeKalb Regional Youth Detention Ctr., 40 F.3d 1176, 1184 n.16 (11th Cir. 1994).  The doctrine of qualified immunity generally shields government officials performing discretionary functions from civil liability when their

_____

[6]  The Individual Defendants are Colonel Coppage, Captain Wright, Officer Hestor, Sergeant Prescott, Officer Tew and Mr. Robinson.

12

conduct does not violate clearly-established constitutional rights which a reasonable person would have known.  See Hope v. Pelzer, 536 U.S. 730, 739-41 (2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Because it is undisputed that Defendants were at all relevant times acting within the scope of their discretionary authority, see Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006), the court proceeds immediately to the second step of the qualified immunity test.  The inquiry at this step is twofold.  As a "threshold question," the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [the government official's] conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001); Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003).  If under Plaintiff's version of the facts, his constitutional rights would have been violated, the court must determine whether those rights were "clearly established."  Saucier, 533 U.S. at 201.  This inquiry focuses on whether the "state of the law" at the time of the alleged violation provided the government officials with "fair warning that their alleged treatment of the [plaintiff] was unconstitutional."  Hope, 536 U.S. at 741.  Applying the foregoing principles, the court addresses Plaintiff's § 1983 claims in reverse order, beginning with Count Three.

### 1.  Count Three:  First Amendment Retaliation Claim

Count Three is a First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983.  (Compl. at 9.)  "The law is well established that a state employee may not be discharged in retaliation for speech protected under the First Amendment."  Vila v. Pardon,

13

484 F.3d 1334, 1339 (11th Cir. 2007) (citing <u>Rankin v. McPherson</u>, 483 U.S. 378, 383

(1987)).  In the public employment context, however, an employee's right to speak freely is

not absolute.  <u>See</u> <u>id.</u>  A public employee who claims to be a victim of retaliation, in

violation of the First Amendment, must show:  "(1) she was speaking as a citizen on a matter

of public concern; (2) her interests as a citizen outweighed the interests of the State as an

employer; and (3) the speech played a substantial or motivating role in the adverse

employment action."  <u>Id.</u>  If the employee makes this showing, "the burden shifts to the

defendant to prove it would have made the same adverse employment decision absent the

employee's speech."  <u>Id.</u> (citations omitted); <u>see</u> <u>also</u> <u>Anderson v. Burke County, Georgia</u>,

293 F.3d 1216, 1219 (11th Cir. 2001).

    Urging dismissal of the First Amendment claim, Defendants assert that Plaintiff has

failed to plead his First Amendment claim with the requisite degree of specificity because he

does not identify or describe the speech which was the catalyst for the retaliation.  (Defs.

Mot. at 6.)  Plaintiff refutes the applicability of qualified immunity in general sweeping

language, but has not provided any specific rebuttal to Defendants' argument.  For the

reasons to follow, the court agrees with Defendants.

    Discerning the factual parameters of Plaintiff's First Amendment claim has proved

unworkable.  In Count Three, after incorporating by reference all previous allegations,

Plaintiff states in conclusory fashion that "Defendants" have taken "adverse actions" against

him based upon "his opposition to their unlawful activities[,]" and that "Defendants

retaliated against [him] with respect to the terms, conditions and privileges of employment because of his opposition to these unlawful practices[.]"  (Compl. ¶ 36.)

The allegations which comprise the First Amendment retaliation claim typify shotgun pleading which has been condemned by the Eleventh Circuit.[7]  Plaintiff recites the facts in one section of the complaint and then in Count Three merely incorporates the facts by reference to all of the preceding facts, without identifying which facts are relevant to the First Amendment retaliation claim.  Plaintiff also generically pleads that "Defendants," in the plural form, deprived him of his First Amendment rights, without enumerating the precise acts of each Defendant which resulted in the alleged constitutional violation.

Finally, the allegations in Count Three, which the court quoted above, amount to little more than legal conclusions.  For example, the word "opposition," which Plaintiff recites in Count Three, is vague and conclusory and of no value in determining whether Plaintiff engaged in speech which is protected by the First Amendment.  The court's attempt to find a factual basis for the First Amendment claim in other parts of the complaint was

_____

[7]  See Sikes v. Teleline, Inc., 281 F.3d 1350, 1355 n.9 (11th Cir. 2002) ("[P]laintiffs' complaint is yet another example of what we have often criticized as 'shotgun pleadings,' where each count 'incorporates' all of the preceding paragraphs and counts.  We have harshly criticized such shotgun pleadings in the past, and we repeat our displeasure with this type of complaint now."); Anderson v. Dist. Bd. of Trustees Cent. Fla. Comm., 77 F.3d 364, 366 (11th Cir. 1996) (describing a complaint where each count adopted the allegations of all preceding counts as an impermissible "shotgun pleading"); Beckwith v. Bellsouth Telecomms., Inc., 146 Fed. Appx. 368, 373 (11th Cir. Aug. 22, 2005) (categorizing complaint as a "shotgun" pleading because "[o]nly a few of [plaintiff's] claims were specific as to any defendant, and the relevant facts were not segregated to each of their respective claims," making it "virtually impossible to ascertain which factual allegations correspond with each claim").

unavailing.  Procedurally, a plaintiff cannot state a claim by merely reproducing in a complaint the legal elements of a claim, but that is what Plaintiff has done in Count Three. Indeed, just last month, the Supreme Court of the United States reiterated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]  Bell Atlantic Corp., ___ U.S. at ___, 127 S.Ct. at 1964-65 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Perkins v. Silverstein, 939 F.2d 463, 466-67 (7th Cir. 1991) (plaintiffs cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims").

Shotgun pleadings do not satisfy a plaintiff's burden under the Federal Rules of Civil Procedure.  It logically follows that shotgun pleadings also do not meet the heightened pleading requirements applicable when qualified immunity is at issue.  If shotgun pleadings are not remedied quickly and early in the litigation, "discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."  Anderson, 77 F.3d 367.  As the remedy, Defendants ask the court to dismiss Count Three; however, if a defendant needs more information to answer a complaint, which is the case here, the proper response is for that defendant to move for a more definite statement under Rule 12(e) of the Federal Rules of

Civil Procedure.[8]  See id. at 366 (a defendant faced with an incomprehensible complaint "is not expected to frame a responsive pleading," but "is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement").  Although Defendants have not formally requested the remedy available to them under Rule 12(e), the court has the "inherent authority" to act on its own and *sua sponte* direct a plaintiff to replead a complaint.  Fikes v. City of Daphne, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996).  In this case, the court finds that the appropriate remedy is to "call[] [Plaintiff's] counsel to task" and direct counsel to remedy the deficient § 1983 First Amendment claim, rather than to dismiss the claim.  Id. at 1084; see also Magluta v. Samples, 256 F.3d 1282, 1284-85 (11th Cir. 2001) (reversing district court's judgment dismissing complaint and remanding to permit plaintiff to replead claims in shotgun complaint); Barnett v. Bailey, 956 F.2d 1036, 1043 (11th Cir. 1992) ("[W]here . . . a complaint may not have contained sufficient information to allow a responsive pleading to be framed, 'a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more

---

[8] The court observes that, recently, in Thomas v. Independence Tp., the Third Circuit highlighted the value of a Rule 12(e) motion in answering the qualified immunity question:

> When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific qualified immunity defense.  In turn, the district court cannot conduct the kind of fact-specific inquiry contemplated in Saucier.  The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief.

463 F.3d 285, 301 (3rd Cir. 2006).

carefully drafted complaint might state a claim upon which relief could be granted.'")

(citation omitted).  Accordingly, based on the foregoing, the court will grant Plaintiff leave

to amend his complaint.  Plaintiff is forewarned, however, that if only conclusory

allegations are provided, the court will entertain and grant a motion to dismiss, if filed.


### 2.  Count Two:  Fourteenth Amendment Due Process Claim

Plaintiff labels Count Two a "Stigma-Plus Due Process–Section 1983" claim.

(Compl. at 8.)  In this count, again after incorporating by reference all preceding allegations,

Plaintiff alleges that "Defendants" (referred to collectively) "published, or caused to be

published, false and damaging statements regarding [Plaintiff] which deprived him of his

liberty interest[s] in his reputation for good character," in his job, and in his future

"opportunities" for employment "without due process" and that Defendants "refused to clear

his name."[9]  (Id. ¶ 33.)

"[A]lthough damage to reputation, standing alone, does not provide a basis for an

action under 42 U.S.C. § 1983[,] when reputational damage is sustained in connection with

_____

[9] No other allegations are contained in Count Two, but, in his response to the
pending motion to dismiss, Plaintiff appears to rely on paragraphs 21 and 22 of the
complaint as the damaging information which Colonel Coppage allegedly disseminated
during the course of Plaintiff's termination proceedings.  (Pl. Resp. at 2 (¶¶ 4-5).)  These
facts are that, on October 20, 2004, in connection with Plaintiff's termination, Colonel
Coppage issued a press release which wrongly accused Plaintiff of falsifying reports and
travel vouchers and misusing state vehicles.  (Compl. ¶ 22.)  Also, Plaintiff complains
that, on November 10, 2004, Colonel Coppage notified the Alabama Peace Officers
Standards and Training Commission that Plaintiff had been fired because he falsified
official documents and that, as a result of these untrue accusations, Plaintiff is prohibited
from working in any law enforcement job in the State of Alabama.  (Id. ¶ 21.)

a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000) (per curiam); see also Graham v. City of Philadelphia, 402 F.3d 139, 142 n.2 (3rd Cir. 2005) (explaining that "'[s]tigma plus' refers to the showing a plaintiff must make in order to recover on a claim for a violation of a liberty interest in reputation under the Due Process Clause" and that the "'plus' is generally termination of employment"). In this circuit, as pronounced in Buxton v. City of Plant City, Florida, to establish a deprivation of a liberty interest without due process of law under the Fourteenth Amendment, a terminated government employee must show:  "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for [an] employee name clearing hearing."  871 F.2d 1037, 1042-43 (11th Cir. 1989); see also Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001) (same).

       Defendants take issue only with the sixth Buxton element.  Defendants contend that the hearing before the Alabama State Personnel Board ("Personnel Board") satisfies any due process right Plaintiff may have had to a "name-clearing hearing."  (Defs. Mot. at 5.) Plaintiff has not presented any argument or authority to the contrary.

Initially, the court observes that the allegations in Count Two suffer some of the same pleading deficiencies as Count Three, discussed above.[10]  Unlike Count Three, however, the court finds that Plaintiff would not be able to cure the pleading deficiencies by amending the complaint.  Namely, for the reasons to follow, the court agrees with Defendants that Count Two is subject to dismissal because the allegations show that Plaintiff received a name-clearing hearing which is all that is required to protect his liberty interest under the Fourteenth Amendment's Due Process Clause.

In Count Two, Plaintiff asserts in broad legal terms that he was denied a "name-clearing hearing," but this bare legal assertion is belied by the factual contentions in other parts of the complaint.  See, e.g., Papasan, 478 U.S. at 286 (when ruling on a motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  Plaintiff has alleged that he requested and received a hearing when he hired an attorney and appealed his termination to the Alabama State Personnel Board.  (Compl. ¶ 24.)  Although Plaintiff requested the hearing for the purpose of challenging his termination, a post-termination hearing is a constitutionally-sufficient forum to afford an aggrieved employee an opportunity to clear his or her name.  See Harrison v. Willie, 132 F.3d 679, 683 n.9 (11th Cir. 1998) (holding that employee was provided a name-clearing hearing "by the same opportunities provided for notice and hearing for the termination itself"); see also

---

[10] Among other deficiencies, the court notes that the complaint does not describe how any of the Defendants, other than Colonel Coppage, allegedly infringed Plaintiff's due process liberty interests.  Even assuming for the sake of argument, however, that all Defendants played a significant role in denying Plaintiff a name-clearing hearing, the court finds that the claim nonetheless fails.

20

Dressler v. Jenne, 87 F. Supp.2d 1308, 1317-18 (S.D. Fla. 2000) (observing that Harrison, *supra*, "clarified that the process due for a name-clearing hearing is not as strict as the process due for a deprivation of a property interest, and therefore the same procedures used to contest a deprivation of a property interest are more than sufficient for a liberty interest"). Also, this hearing is not rendered constitutionally defective because it occurred after the alleged deprivations; it is not necessary that the name-clearing hearing precede the discharge.  See Cotton, 216 F.3d at 1330 (holding that a name-clearing hearing "can be held either before or after the termination or publication"); Campbell v. Pierce County, Georgia, 741 F.2d 1342, 1345 (11th Cir. 1984) ("Because it is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests.").  Plaintiff has not alleged or argued that he was denied an opportunity during his hearing before the administrative law judge to refute the validity of the alleged stigmatizing charges against him.  See Cotton, 216 F.3d at 1328 (holding that if an adequate state remedy is available to afford the employee with the opportunity for a name clearing hearing, he or she cannot state a procedural due process claim based upon a deprivation of liberty).  To the contrary, Plaintiff has alleged that he was represented by counsel at the hearing and that the hearing lasted three-days before an administrative law judge, and that ultimately the Personnel Board sided with him and reinstated his employment.

Based on the foregoing, the court finds that Plaintiff cannot maintain a Fourteenth Amendment claim based upon the deprivation of a liberty interest because the hearing held

21

in conjunction with Plaintiff's appeal of his termination provided Plaintiff with a name-clearing hearing which was sufficient to avoid a due process violation. Accordingly, the court finds that Defendants' motion to dismiss Plaintiff's claim in Count Two that Defendants deprived Plaintiff of his Fourteenth Amendment "liberty rights without due process" is due to be granted.

### 3. Count One: Fourteenth Amendment Equal Protection Claim

Count One attempts to allege a 42 U.S.C. § 1983 equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Because Plaintiff does not allege that he is a member of a suspect class, Defendants are correct that he must proceed under the equal protection "class of one" theory first announced in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam ). Defendants, however, argue that the Olech class-of-one theory should not be extended to the public employment context and, on that basis, urge dismissal. Alternatively, Defendants contend that they are entitled to qualified immunity "since the law is not clearly established that employment actions by a class of one where no suspect class is involved can constitute a violation of the Equal Protection Clause." (Defs. Mot. at 4.)

Olech was a zoning case.  In Olech, the Supreme Court of the United States held that a landowner could maintain a Fourteenth Amendment equal protection claim against a Village based on allegations that the Village intentionally and arbitrarily had demanded that she provide the Village, in exchange for connection to the municipal water supply, a 33-foot easement on her property.  She alleged that other similarly-situated landowners only were required to give a 15-foot easement for access to municipal water.  See Olech, 528 U.S. at 563-65.

With different results, some circuits have considered whether the Olech equal protection class-of-one theory can be applied to the public employment context.  See Engquist v. Oregon Dep't of Agriculture, 478 F.3d 985, 993-96 (9th Cir. 2007) (discussing split among the circuits and collecting cases; holding that the Olech "class-of-one theory of equal protection is inapplicable to decisions made by public employers with regard to their employees").  The parties have not pointed to any published opinion from the Eleventh Circuit that has addressed whether the "class of one" theory from Olech applies

23

to a public employer's alleged discriminatory employment decisions, and the court is

aware of none.[11]  The issue, thus, appears to be one of first impression in this circuit.

Defendants urge the court to decide the novel issue by finding that Olech should

not be extended to the public employment context.  In an ordinary qualified immunity

case, the court is required to address the question of whether the facts alleged in the

complaint demonstrate a constitutional violation, even when it is easier to skip the

substantive constitutional question and conclude that, at the very least, the law was not

clearly established.  See Saucier, 533 U.S. at 201.  In this atypical case, however, the

alleged constitutional question presents a novel issue of law, one which is unresolved in

this circuit.  Not only does the extension of Olech in the public employment context

---

[11] The court notes that in Eggleston v. Bieluch, an unpublished decision, the
Eleventh Circuit declined to decide whether the Olech holding extended to an employment
discrimination lawsuit and instead resolved the case on another ground.  See 203 Fed.
Appx. 257 (11th Cir. Oct. 3, 2006).  In Eggleston, a § 1983 lawsuit, the plaintiff was a
former sheriff's employee who sued the sheriff who fired him.  Appealing the grant of
summary judgment entered in favor of the sheriff, the plaintiff alleged, among other things,
that his termination violated his Fourteenth Amendment equal protection rights because the
sheriff disciplined him more severely than other named employees who he contended
engaged in similar conduct.  See id. at 262-264.  When analyzing the Fourteenth
Amendment equal protection claim, the Eleventh Circuit "assum[ed] without deciding that
the 'class of one' theory articulated in . . . Olech . . . applies in the public employment
context."  Id. at 264.  Given this assumption, the Eleventh Circuit held that, to succeed, the
plaintiff "must show that he has been 'intentionally treated differently from others similarly
situated and that there is no rational basis for the difference in treatment.'"  Id. (citing
Olech, 528 U.S. at 564).  The Eleventh Circuit held, however, that, although the plaintiff
had offered six comparators, he failed to demonstrate that any of these individuals were
"similarly ranked" officers "who both campaigned during the work day while in uniform
and publicly criticized [the former sheriff] and the department," as the plaintiff had done.
Hence, the court held that the plaintiff failed to demonstrate "a single, similarly situated
individual who was treated differently."  Id. at 265.

present a legal issue of first impression in this circuit, but also this case is before the court on a motion to dismiss at the pleading stage, without the benefit of discovery. At least one district court has found in a § 1983 action that "novel legal questions are not amenable to resolution at the motion to dismiss stage." Logiodice v. Trustees of Maine Cent. Institute, 135 F. Supp.2d 199, 205 (D. Me. 2001) (citing Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 at 341-43 (1990)); cf. Shull v. Pilot Life Ins. Co., 313 F.2d 445, 447 (5th Cir. 1963) ("It is perhaps ironic that the more extreme or even far-fetched is the asserted theory of liability, the more important it is that the conceptual legal theories be explored and assayed in the light of actual facts, not a pleader's supposition."). Relatedly, the court is cautioned to avoid deciding constitutional issues where possible. See Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). The Eleventh Circuit in Eggleston, see supra footnote 11, in effect, followed Lyng when it assumed for argument only the existence of a viable Olech claim and then decided the case on a non-constitutional ground, i.e., the absence of summary judgment evidence to support an essential element of the presumed claim. See 203 Fed. Appx. 257, 262-264; see 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."). As in Eggleston, it may be that, even if the court were to decide today that Olech could be applied in the public employment realm, Olech would not apply to the facts of this case. The reasons for the

25

court to refrain at this time from deciding the constitutional issue are just as, if not more, compelling in this case than in Eggleston, not only because the court does not have the benefit on a motion to dismiss of examining the evidentiary facts, but also because, as discussed below, the complaint's allegations do not satisfy the applicable pleading requirements.

Defendants, though, essentially ask the court to overlook the pleading deficiencies in the complaint and proceed directly to a decision on the novel constitutional question. The court declines Defendants' invitation.  The facts in the complaint are too vague and conclusory, and Defendants' suggested procedure may result in a premature and unnecessary ruling by this court on a constitutional question.  See Lyng, 485 U.S. at 445. The court, though, will require Plaintiff to replead his equal protection claim with more specificity should he desire to pursue this claim.  The court already has discussed the heightened pleading standard applicable in § 1983 actions when qualified immunity is at stake and need not repeat that discussion here.  Count One suffers from many of the pleading deficiencies which plague Count Three, discussed *supra*.  As a specific example in Count One (an example which is representative and not exhaustive of the deficiencies), in Olech class-of-case cases it is critical for a plaintiff to demonstrate disparity in treatment.  See Eggleston, 203 Fed. Appx. at 264 (observing that under Olech a plaintiff must show, in part, "that he has been 'intentionally treated differently from others similarly situated'" and reaffirming that in this circuit the "'quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from

26

second-guessing employers' reasonable decisions and confusing apples with oranges'")

(quoting <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368-69 (11th Cir. 1999).)  Plaintiff alleges

that other "similarly-situated" sworn officers exist, but this generic averment simply is too

general to permit any meaningful analysis of whether such individuals are proper

comparators.  (<u>See</u>, <u>e.g.</u>, Compl. ¶ 20.)

       If, and only if, Plaintiff can provide some factual detail as to the basis of his

Fourteenth Amendment equal protection claim so as to bring his complaint in compliance

with the heightened pleading standard will the court allow the case to proceed to the

summary judgment stage, where Defendants will be able to again raise the issue of

qualified immunity and the court will be able to decide the <u>Olech</u> issue of first impression

in the context of evidentiary facts.  Accordingly, the court finds that Defendants' motion

to dismiss the Fourteenth Amendment equal protection claim is due to be denied at this

time.

### D.  <u>Counts Four, Five, Six and Seven</u>

       Seeking dismissal of Count Four, a 42 U.S.C. § 1985 claim, Defendants state only

that Plaintiff "has failed to allege a cause of action[.]"  (Defs. Mot. at 6.)  Defendants

begin and end their argument with this single sentence.  The court declines to dismiss

Count Four on such a terse assertion that is not supported by any authority or developed

argument.  Defendants' assertion that they "enjoy a state-agent immunity from suit" on the

"remaining" state-law claims is insufficient for the same reason.  (<u>Id.</u>)  Accordingly, the

court finds that Defendants' motion to dismiss Count Four and the "remaining" state-law claims (Counts Five, Six and Seven) is due to be denied.

## VI.  ORDER

For the reasons asserted herein, it is CONSIDERED and ORDERED that Defendants' motion to dismiss be and the same is hereby GRANTED in part and DENIED in part as follows:

(1)  Defendants' motion to dismiss all claims brought against the Alabama Department of Public Safety be and the same is hereby GRANTED and the Alabama Department of Public Safety is hereby DISMISSED as a Defendant in this lawsuit.

(2)  Defendants' motion to dismiss the federal-law claims in Counts One, Two, Three and Four against Defendant W. M. Coppage in his official capacity be and the same is hereby GRANTED.

(3)  Defendants' motion to dismiss Plaintiff's claim in Count Two that Defendants W. M. Coppage, Herman Wright, Danny Hestor, Byron D. "Pete" Prescott, Neil Tew and Michael Robinson deprived him of a liberty interest protected by the Fourteenth Amendment's Due Process Clause be and the same is hereby GRANTED.

(4)  Defendants' motion to dismiss the § 1983 First Amendment and Fourteenth Amendment Equal Protection individual-capacity claims in Counts One and Three against Defendants W. M. Coppage, Herman Wright, Danny Hestor, Byron D. "Pete" Prescott, Neil Tew, and Michael Robinson be and the same is hereby DENIED at this time. Plaintiff is granted leave until June 25, 2007, to move to amend his complaint to allege

claims which comply with the applicable heightened pleading requirements.  Any amended complaint shall be accompanied by a motion for leave to amend, shall comply with this District's local rules for the filing of amendments,[12] and shall not restate claims which have been dismissed by the terms of this order.  Failure to move to amend the complaint by the date above shall result in dismissal with prejudice of said claim(s).

(5)  Defendants' motion to dismiss the 42 U.S.C. § 1985 claim in Count Four be and the same is hereby DENIED.

(6) Defendants' motion to dismiss the state-law causes of action in Counts Five, Six and Seven be and the same is hereby DENIED.

DONE this 11th day of June, 2007.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

---

[12] See M.D. ALA. L.R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference.").