IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD P. HAYDEN | ) | |
|    and | ) | |
| MELISSA LONG HAYDEN | ) | |
|    Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv948-ID (WO) |
| | ) | |
| W. M. COPPAGE; DANNY HESTER | ) | |
| HERMAN WRIGHT; BYRON D. | ) | (Jury Demand) |
| "PETE" PRESCOTT; NEIL TEW; and | ) | |
| MICHAEL ROBINSON | ) | |
| | ) | |
|    Defendants | ) | |

COMPLAINT
(Amended)

JURISDICTION AND VENUE

1)    This court has jurisdiction over this action pursuant to the First and Fourteenth Amendments to the United States Constitution; 28 U.S.C. §§ 1331; 1343; 1367; 2201; 2202; and, 42 U.S.C. §§ 1983; 1985; 1988.

2)    Venue is proper in this Court in that all parties hereto are residents of the state of Alabama, and all acts complained of herein occurred in the county of Montgomery in the Middle District of Alabama.

PARTIES

3)    Plaintiff Ronald Hayden is of more than nineteen years of age, a resident of Baldwin County, Alabama, and, was, at all times relevant to this action, an employee of the Alabama Department of Public Safety (DPS), in Montgomery, Alabama.

4)    Plaintiff Melissa Long Hayden is of more than nineteen years of age, a resident of Baldwin County, Alabama, and is the spouse of plaintiff Ronald Hayden.

1

5)      Defendant Colonel W. M. Coppage is or was the director of the Alabama Department of Public Safety, and is sued only in his individual capacity for actions taken under the color of state law.

6)      Defendant Herman Wright is or was a sworn officer employed by the Alabama Department of Public Safety, and is sued in his individual capacity only for acts taken under the color of state law.

7)      Defendant Danny Hester is or was a sworn officer employed by the Alabama Department of Public Safety, and is sued in his individual capacity only for acts taken under the color of state law.

8)      Defendant Byron D. "Pete" Prescott is or was a sworn officer employed by the Alabama Department of Public Safety, and is sued in his individual capacity only for acts taken under the color of state law.

9)      Defendant Neil Tew is or was a sworn officer employed by the Alabama Department of Public Safety, and is sued in his individual capacity only for acts taken under the color of state law.

10)     Defendant Michael Robinson is or was an assistant attorney general serving as counsel for the Alabama Department of Public Safety, and is sued in his individual capacity for acts taken under the color of state law.

FACTS

11)     Ronald Hayden began his service as a sworn officer and merit system employee of the Alabama Department of Public Safety in or about the year of 1985. Prior to this employment he had been in active service as a Military Police officer in the U. S. Army, serving in Vietnam, Germany, Panama, and at West Point.

12)     On or about the date of November 2, 2002, Ron Hayden was asked by Bob and Patsy Riley to serve as a full-time security officer for Bob Riley if Riley won the governorship of Alabama.   Hayden agreed, and on or about the date of November 4, 2002, he was assigned by the Alabama Department of Public Safety to serve as a full-time security agent for Bob Riley.   This assignment continued throughout the time the 2002 gubernatorial election result was contested, and after Bob Riley was inaugurated as governor.   Hayden performed his duties in this position in an exemplary manner and earned "exceeds standards" ratings from his supervisors on his performance evaluations.

13)     On or about the date of September 8, 2004, Hayden was informed verbally by Captain Herman Wright that he was the subject of an investigation by the Standards and Integrity Unit (SIU) of the Alabama Department of Public Safety.   Captain Wright was the officer in command of the SIU.   Hayden was not informed of the nature or substance of this investigation by Wright at this time.

14)     Later on that day, Hayden was provided with a memorandum dated September 8, 2004, and signed by Colonel W. M. Coppage which stated that he was under investigation by the SIU for "misconduct and conduct unbecoming in that a review of DPS documentation revealed numerous discrepancies in work hours claimed, travel claims, and vehicle usage."   The memo also directed Hayden that he was not to contact anyone regarding these charges or to discuss the charges with anyone; and, that he would be allowed an opportunity to present facts, evidence and witnesses during the investigation.   Colonel Coppage was, at all times relevant to this statement of facts, the Director of the Alabama Department of Public Safety.

15)     Hayden was shocked by these allegations of misconduct.  Hayden had been highly rated in his annual performance evaluations.  He was specifically praised in his evaluations for his attention to detail and adherence to policy; and, his supervisors had approved all his hours worked, his travel and his vehicle usage as necessary to provide protection for the Governor and First Lady.  His immediate supervisors, defendants Tew and Prescott, had never counseled him that his work was deficient or unacceptable in any way.

16)     Hayden also received a memorandum from Captain Wright, dated September 9, 2004, which informed him: a) he was the subject of an "active complaint investigation"; b) he was directed to attend an administrative interview on 9/10/04; c) the failure to attend would result in disciplinary action; and, d) he was "ordered not to discuss this case or investigation with anyone unless authorized to do so by the SIU or the Director."

17)     Hayden attended the "administrative interview" conducted by Defendant Wright on September 10th as directed.  During this interview he was questioned about approximately 23 travel, overtime, and/or per diem records that he had previously submitted and which had been given approval by his immediate supervisor, Prescott; his reviewing supervisor, Tew; and, the department director, Coppage.  Hayden was not allowed to have access to any of the allegedly improper records, but responded to Wright's questions to the best of his memory.

18)     Hayden was directed to meet with Col. Coppage on or about September 23, 2004 at which time he was told that he was being placed on ten days mandatory annual leave while he was being investigated.  Coppage stated during this meeting that

4

Hayden was "being less than truthful" and that he was "in a lot of trouble".   At the conclusion of this mandatory leave period, Hayden was required to turn in his service weapons, badge, and state trooper identification.  He was further required to take two additional involuntary ten-day "mandatory" annual leaves.

19)   Neil Tew, acting chief of the Executive Protection Division, informed Hayden in a letter dated October 1, 2004 that he concurred with the recommendation of Hayden's immediate supervisor, Prescott, that Hayden should be terminated due to numerous incidents of falsified documents that rose to the level of serious misconduct and conduct unbecoming to an officer.  Hayden was subsequently notified by Col. Coppage that he concurred with Tew, and Hayden's employment with the Alabama Department of Public Safety was terminated effective November 3, 2004.

20)   Hayden was not given an opportunity to examine the evidence supporting the allegations of misconduct against him, to present any witnesses on his own behalf, nor to cross-examine his accusers at any time prior to his termination.  Hayden timely filed an appeal of his termination with the State Personnel Board on or about the date of November 12 2004.

21)   Hayden subsequently learned that the initial "investigation" had included four employees of the Executive Protection Unit for a 30 day period and was later expanded to cover the months of April, May and June of 2004.   Defendants Prescott and Tew have stated that they selected the employees to be investigated at "random", i.e., they selected two republicans and two democrats.

22)   Hayden was also examined for the month of March 2004; an expanded investigation which Prescott and Tew falsely claimed was necessitated due to the large or

vast number of discrepancies found in Hayden's records.   Prescott requested that

defendant Hester be assigned to assist him in conducting the expanded investigation of

Hayden.  In fact, Hayden's records contained no more "discrepancies" than those of other

officers who were not included in the expanded investigation.  Hayden was also not given

an opportunity to explain any alleged discrepancies as were other similarly-situated

officers prior to the time that he was formally charged with misconduct.

       23)    Defendants Coppage, Wright, Hester, Prescott and Tew initiated and

carried out their investigation of Hayden in an arbitrary and unreasonable manner; other

sworn officers of the DPS and the Executive Protection Unit were not subjected to

investigation and scrutiny of their work hours, travel claims and vehicle usage in the

same manner as was Hayden.  These defendants held Hayden accountable for violating

rules that had not been communicated to him, and failed to hold other similarly-situated

officers accountable for the same non-articulated work rules.  They subjected Hayden to

an unreasonable and arbitrary scrutiny that was not undertaken regarding other similarly-

situated officers and made false charges against Hayden that he had violated standards

and rules governing work hours, travel, and vehicle usage in order to bring his law

enforcement career to an end.

       24)    Hayden was required to turn in his weapons, badge and law enforcement

identification on or about the date of October 8, 2004.  Hayden was unable to function as

a law enforcement officer without these indicia of his position.  On November 10, 2004,

Col. Coppage submitted a POST-8 form to the Alabama Peace Officers Standards and

Training Commission (APOSTC) stating that Hayden's employment had been terminated

for "falsifying documents".  As a consequence of this action, Hayden was unable to be

certified to be employed by any law enforcement agency in the country and lost his liberty interest in working in his life-long career.

25)     On or about the date of October 20, Col. Coppage, or others acting on his behalf, issued a press release which accused Hayden of falsifying reports, travel vouchers and misuse of state vehicles.  This information, which was false and defamatory, was reported in the major media of the state and caused great personal humiliation, embarrassment and damage to the reputation of Hayden.

26)     As a result of Coppage's certification to APOSTC that he had been terminated due to dishonesty and falsification of records, Hayden found himself unable to secure gainful employment in his chosen career.  Hayden and his wife borrowed money so that he could purchase credit with the Alabama Retirement Systems for two years of his military service.  This would enable Hayden to qualify for "retirement" from state employment with 20 years of service and to have some means of income.   He submitted this payment for additional credited service, and an application for retirement in early November.

27)     Robinson prevented Hayden from qualifying for retirement when he refused to certify Hayden's time-in-service and earnings to the Alabama Retirement Systems, stating that Hayden had realized "unearned economic benefits".  Hayden was eventually was placed on a "conditional" retired status in January 2005 even though his employment and earnings were never certified by the defendants.

28)     After Hayden secured the services of an attorney and appealed his termination of employment to the Alabama State Personnel Board, Coppage, or others under his control and at his direction, arbitrarily and unreasonably expanded the scope of

its complaints to include an additional six months.  Their response to his appeal included more than fifty additional charges of misconduct which had not included in the investigation which formed the pretext for their termination of his employment.

29)     Following a three-day hearing before an administrative law judge, all eighty-three charges brought against Hayden were found to be unsubstantiated and the judge recommended that he be reinstated.  The Administrative Law Judge found, specifically, that the charges against Hayden were "contrived", "without merit", ignored the evidence, and lacked credibility.

30)     The Alabama State Personnel Board voted unanimously to accept the findings and recommendation of the Administrative Law Judge to overturn Hayden's termination on November 21, 2005, and ordered him to be reinstated within ten days with all accrued pay and benefits.

31)     Coppage and Robinson refused to reinstate Hayden to his prior position of employment.  Instead they required him to sign requests for annual leave and informed his attorney that he should not report to work and that he would not be "considered to have abandoned his job" for not reporting.  Robinson informed Hayden that he should retire by February 1, 2006, if he could.

32)     After Hayden filed notice of the appeal of his termination, Coppage and Robinson made requests to the Alabama Ethics Commission and the Alabama Attorney General's office that Hayden should be prosecuted for the charges of misconduct which they had presented to the State Personnel Board.  Even though Hayden was been cleared of these false and malicious charges, Col. Coppage and Robinson have not withdrawn their requests for prosecution of Hayden.

33)     Coppage and Robinson, or others working on their behalf, utilized their official position to instigate an action with the Alabama Department of Public Examiners to require Hayden to re-pay the state for expenses and charges which had been already been adjudicated as unfounded and improper by the State Personnel Board.

34)     The defendants deliberately acted to prevent the order of the State Personnel Board from being carried out, including reinstatement and restoration of pay and benefits; have deliberately failed to take any action to clear Hayden's name or repair the damage done to his reputation; have deliberately refused to take action to restore his weapons, and badge and; and, continue to subject him to the loss of income and other benefits.

35)     Coppage mailed to APOSTC a new POST-8 form, labeled as "Corrected", which stated that Hayden had retired on January 1, 2005.  This form was dated August 17, 2006, ten days after Hayden filed a Petition for Declaratory Judgment in the Montgomery County Circuit Court which sought the restoration of his certification as a law enforcement officer along with implementation of the Personnel Order reinstating his employment.

CAUSES OF ACTION

As to each of the counts herein below set forth, Plaintiff expressly adopts as if fully set forth herein the allegations of the foregoing paragraphs.

COUNT ONE
(Equal Protection-Section 1983)

36)     The Defendants, acting under the color of state law, intentionally deprived Hayden of his rights to equal protection under the law in one or more of the following

ways:

a. They caused him to be investigated and disciplined arbitrarily, unreasonably
and with deliberate indifference to his rights under the law as set above forth in
paragraphs 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 23 and otherwise, treating him
differently than other similarly-situated DPS and/or Executive Protection employees for
reasons unrelated to a legitimate government objective; and/or,

b. They caused him to be investigated and terminated, unreasonably and
maliciously depriving him of his substantive right to employment in his life-long career
as a law enforcement officer and subjecting him to differential treatment which was
arbitrary and capricious as set forth above in paragraphs 13, 14, 15, 16, 17, 18, 19, 20, 21,
22, 23, 24, 28 and otherwise , under the color of their authority as state actors; and/or,

c. They arbitrarily and willfully refused to reinstate him to his position of
employment following the action of the State Personnel Board which overturned their
wrongful termination of him as set forth above in paragraphs 29, 30, 31, 34 and
otherwise, under the color of their authority as state actors.

37)    As a result of the Defendants' conduct set forth above, Hayden is entitled
to equitable compensatory and declaratory relief, damages for emotional and mental
distress, and reasonable attorney's fees and costs.

38)    Additionally, Hayden states that Defendants acted intentionally,
maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights in
their unequal treatment of him; and for such conduct, Defendants are liable for punitive
damages in such amount as the jury may decide.

## COUNT TWO
(Retaliation)

39)     The Defendants have perpetrated, condoned and permitted adverse actions against Hayden on account of and on account of his opposition to their unlawful activities.   Hayden opposed these unlawful discriminatory practices by the Defendants. Defendants retaliated against Hayden with respect to the terms, conditions and privileges of employment because of his opposition to these unlawful practices in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution of the United States of America for which Defendants are liable.

40)     As a result of the Defendants' conduct set forth above in paragraphs 24, 25, 26, 27, 28, 31,32, 33, 34 and otherwise, Hayden is entitled to equitable, compensatory and declaratory relief; damages for emotional and mental distress; and, reasonable attorney's fees and costs.

41)     Additionally, Hayden states that Defendants acted intentionally, maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights, in retaliating against him for his opposition to their unequal treatment of him; and for such conduct, Defendants are liable for punitive damages in such amount as the jury may decide.

## COUNT THREE
(Section 1985)

42)     Plaintiff was subjected to adverse treatment which was not afforded to other sworn officers of the DPS as a result of a conspiracy between the Defendants in violation of 42 U.S.C. § 1985. Each of the Defendants has conspired and agreed between themselves for the purpose of depriving, either directly or indirectly, Hayden of the equal

protection of the laws, or of equal privileges and immunities under the laws; or to impede, hinder, obstruct, or defeat the due course of justice, with the intent to deny Hayden the equal protection of the laws; or to injure Hayden for lawfully enforcing, or attempting to enforce his rights to equal protection of the laws; and, have conspired and agreed to inflict such harassment upon him. Each individual Defendant has taken an act in furtherance of the conspiracy and Hayden has been injured in his person and property, and has been deprived of rights and privileges secured to citizens of the United States.

43)     Defendants reached an understanding, engaged in a sequence of events or course of conduct, and otherwise agreed and conspired together to violate the rights of Hayden. These Defendants did reach this understanding and agreement, and did engage in this course of conduct with the mutual purpose, objective, and knowledge that it would deprive Hayden of his rights, privileges, and immunities as guaranteed by the laws of the United States, and by the First and Fourteenth Amendments to the United States Constitution.

44)     Acting in furtherance of this plan and conspiracy, the Defendants did commit overt acts to otherwise retaliate and discriminate against Plaintiff in the terms and conditions of his employment; all to Hayden's damage.

45)     As a result of the Defendants' conduct set forth above, Hayden is entitled to equitable compensatory and declaratory relief, damages for emotional and mental distress, and reasonable attorney's fees and costs.

46)     Additionally, Hayden states that Defendants acted intentionally, maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights, in retaliating against him for his opposition to their unequal treatment of him; and for such

12

conduct, Defendants are liable for punitive damages in such amount as the jury may decide.

COUNT FOUR
(Defamation/Defamation *Per Se* – State Law)

47)    The Defendants published or caused to be published false and defamatory statements concerning Hayden, to wit, that he had falsified documents and improperly utilized state vehicles and had committed other acts of moral turpitude.

48)    The statements made by the Defendants were defamatory per se in that they constituted an accusation that Hayden was guilty of a crime involving moral turpitude, to wit, theft of state funds, and were made with actual knowledge that said statements were false, or with reckless disregard for their truth or falsehood.

49)    As a direct and proximate result of said defamatory statements, Hayden has been caused to suffer embarrassment, humiliation, loss of good name and reputation, mental anguish and suffering, and other damages.

50)    The defendants have notice of the harm done thereby, and have refused to retract or otherwise withdraw the false and defamatory statements made by them

51)    Hayden demands judgment against the defendants on this count in such amount as the jury may find proper as compensatory damages and for mental and emotional distress. Plaintiff additionally demands an award of punitive damages in such amount as sufficient to deter the Defendant and those similarly situated from such wanton and reckless conduct in the future.

## COUNT FIVE
### (Conspiracy – State Law)

52)     This is an action brought pursuant to the law of the State of Alabama for conspiracy to commit the torts described herein above.

53)     Defendants combined, agreed, and conspired between themselves to commit the unlawful acts alleged herein.

54)     Defendants' actions were willful and with malice, and as a proximate result, caused injury and damage to Plaintiff.

55)     As a result of the Defendants' conduct set forth above, Hayden is entitled to equitable compensatory and declaratory relief, damages for emotional and mental distress, and Defendants' are liable for punitive damages in such amount as determined by the jury.

## COUNT SIX
### (Loss of Consortium – State Law)

56)     Plaintiff Melissa Long Hayden claims that the Defendants by their wrongful acts caused her the loss of the consortium and services of her husband, including but not limited to, love, companionship, affection, society, comfort, solace, support, sexual relations and other services.

57)     As a result of the Defendants' conduct set forth above, Plaintiff is entitled to equitable compensatory relief, damages for emotional and mental distress, and Defendants' are liable for punitive damages in such amount as determined by the jury.

THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.

Respectfully submitted this 29th day of June 2007.

_____/S/ **JIMMY JACOBS**_____
JIMMY JACOBS (JAC051)

14

Attorney for Plaintiffs
4137 Carmichael Rd., Ste 100
Montgomery, Alabama 36106
(334) 215-1788

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing was transmitted to the Clerk of the Court for entry and for service upon counsel of record by electronic transmission on this the 29th day of June, 2007.

                             /s/**JIMMY JACOBS**
                             JIMMY JACOBS (JAC051)
                             Attorney for Plaintiff

COUNSEL OF RECORD:

Jack Curtis, Esq.
William G. McKnight, Esq.
Deputy Attorney General
Attorney for Department of Public Safety
Department of Public Safety Legal Unit
P.O. Box 1511
Montgomery, Alabama 36102-4511