IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RONALD P. HAYDEN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 2:06cv948-ID |
| | )                    (WO) |
| W. M. COPPAGE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' motion to dismiss the amended complaint, which is
accompanied by a brief.  (Doc. Nos. 18-19.)  Plaintiffs filed a response in opposition.  (Doc.
No. 23.)  Accepting the facts in the amended complaint as true and having carefully
considered the arguments of counsel, the relevant law, and the amended complaint's
allegations, the court finds that Defendants' motion is due to be granted, that the federal-law
claims in Counts One, Two and Three are due to be dismissed with prejudice and that the
state-law claims in Counts Four, Five and Six are due to be remanded to state court pursuant
to 28 U.S.C. § 1367(c)(3).

## I.  BACKGROUND

In a prior memorandum opinion and order entered in this case (hereinafter
"Hayden I," see Doc. No. 4), the court agreed with Defendants that the complaint did not
satisfy the heightened pleading standard as to the 42 U.S.C. § 1983 individual-capacity
claims against Defendants.  The claims at issue were a Fourteenth Amendment equal

protection claim, premised on the "class of one" theory announced in Village of

Willowbrook v. Olech, 528 U.S. 562 (2000), and a First Amendment retaliation claim.[1]

In Hayden I, addressing the sufficiency of the allegations of the First Amendment

retaliation claim, the court concluded that those allegations typified shotgun pleading and

failed to satisfy Plaintiff's pleading burden.  (Id. at 14-18.)  The court also observed that

whether the Olech equal protection class-of-one theory can be applied in the public

employment context appears to be a novel issue in this circuit and that other circuits

disagree on Olech's application in the public employment context.  (See Hayden I, at 23-24

(citing, among others, Eggleston v. Bieluch, 203 Fed. Appx. 257 (11th Cir. 2006).)  The

court observed that "it may be that, even if the court were to decide today that Olech could

be applied in the public employment realm, Olech would not apply to the facts of this case"

and that it should refrain from deciding the novel constitutional question on "vague and

conclusory" facts.  (Id. at 25-26.)  The court, thus, required Plaintiff to replead his equal

protection claim with more specificity, noting as a non-exhaustive example of the pleading

deficiencies, that Plaintiff's general references to "similarly-situated" sworn officers were

too vague to permit any meaningful analysis of whether such individuals are, in fact, proper

comparators.  The court, however, "forewarned" Plaintiff "that if only conclusory

allegations [were] provided, the court [would] entertain and grant a motion to dismiss, if

filed."  (Hayden I, at 18, 27.)

_____

[1] The court notes that Plaintiff Melissa L. Hayden joins her husband in this
lawsuit.  Because she asserts only a derivative claim for loss of consortium, references in
this opinion to "Plaintiff" refer to Ronald P. Hayden.

Plaintiff filed an amended complaint in response to the court's directives.  In his amended complaint, brought pursuant to 42 U.S.C. §§ 1983, 1985 and state law, Plaintiff reasserts a Fourteenth Amendment <u>Olech</u>-type "class of one" equal protection claim (Count One), a First Amendment retaliation claim (Count Two), and a claim that Defendants entered into a conspiracy to deprive Plaintiff the equal protection of the laws or the equal privileges and immunities under the law (Count Three).  Counts Four, Five and Six are state-law claims.

Counts One, Two and Three are brought against all Defendants, who are sued only in their individual capacities.  The Defendants are:  (1) Colonel W. M. Coppage ("Colonel Coppage"), the director of the Alabama Department of Public Safety ("ADPS"); (2) Captain Herman Wright ("Captain Wright"), the ADPS officer in command of the Standards and Integrity Unit; (3) Danny Hestor ("Officer Hestor"), an ADPS "sworn officer"; (4) Sergeant Byron D. "Pete" Prescott ("Sergeant Prescott"), an ADPS "sworn officer"; (5) Neil Tew ("Officer Tew"), acting chief of the Executive Protection Division; and (6) Defendant Michael Robinson ("Mr. Robinson"), the assistant attorney general who served as legal counsel for the ADPS.

Because the specificity of Plaintiff's allegations is at the forefront, the court will delineate the allegations in the amended complaint.  They are as follows.

On September 8, 2004, Plaintiff had worked nineteen years as a "sworn officer" for the ADPS, most recently in the capacity as Governor Bob Riley's full-time security officer. (Am. Compl. ¶¶ 11-12.)  September 8, 2004, is a significant date in Plaintiff's life, as on this

date Captain Wright informed Plaintiff that he was the subject of an investigation by the Standards and Integrity Unit ("SIU") of the ADPS.  (Id. ¶ 13)  Plaintiff was "shocked" because he was an "exemplary" employee, having always earned "exceeds standards" ratings on his performance evaluations, and Captain Wright gave no explanation about the nature of the investigation.  (Id. ¶¶ 12-13, 15.)

A written memorandum, memorializing Captain Wright's oral communication, followed.  The memorandum, authored by Colonel Coppage, stated that Plaintiff was under investigation by the SIU concerning "discrepancies" in documents Plaintiff had submitted during the course of his employment pertaining to "work hours claimed, travel claims, and vehicle usage."  (Id. ¶ 14.)

On September 10, 2004, Plaintiff attended an "administrative interview" pertaining to the charges of misconduct.  (Id. ¶ 16.)  Captain Wright conducted the interview.  (Id. ¶ 17.) On September 23, Colonel Coppage placed Plaintiff on "mandatory annual leave" pending the investigation, accused Plaintiff of "'being less than truthful,'" and required Plaintiff "to turn in his service weapons, badge and state trooper identification."  (Id. ¶ 18.)  At the conclusion of the investigation, Plaintiff was fired.  His termination was effective November 3, 2004.  The recommendation for termination was made by Sergeant Prescott (Plaintiff's immediate supervisor), and Officer Tew and Colonel Coppage concurred in the recommendation.  (Id. ¶ 19.)

When Plaintiff appealed his termination to the Alabama State Personnel Board, Coppage, "or others under his control and at his direction, arbitrarily and unreasonably

4

expanded" the charges against him, adding more than fifty charges occurring during an additional six-month period.  (Id. ¶ 28.)  Ultimately, however, an administrative law judge found all of the charges without merit.  (Id. ¶ 29.)  On November 21, 2005, the Alabama State Personnel Board concurred with the administrative law judge's recommendation and ordered Plaintiff "to be reinstated within ten days with all accrued pay and benefits."  (Id. ¶ 30.)  Colonel Coppage and Mr. Robinson, however, have "refused to reinstate Plaintiff to his prior position of employment."  (Id. ¶ 31.)

Plaintiff later learned that his "investigation" resulted from Sergeant Prescott's and Officer Tew's decision to conduct a "random" records investigation of four employees of the Executive Protection Unit.  In Plaintiff's words, "Prescott and Tew have stated that they selected the employees to be investigated at 'random,' *i.e.*, they selected two republicans and two democrats."  (Id. ¶ 21.)  Plaintiff and the three other randomly-selected employees were subject to a review of their records spanning a specified thirty-day period.  (Id. ¶¶ 21, 22.)  Subsequently, Sergeant Prescott and Officer Tew expanded the investigation of Plaintiff's records on the asserted but "false[]" ground that further review of Plaintiff's records was "necessitated due to the large or vast number of discrepancies found in [Plaintiff's] records," but did not similarly extend the investigation as to the other three officers.  (Id. ¶ 22.)  Plaintiff, however, avers that his "records contained no more 'discrepancies' than those of other officers who were not included in the expanded investigation" and that he was "not given an opportunity to explain any alleged

discrepancies as were other similarly-situated officers prior to the time that he was formally charged with misconduct."  (Id.)

In Count One, which incorporates by reference specified preceding paragraphs, Plaintiff alleges an equal protection "class of one" claim.  He asserts that "Defendants . . . initiated and carried out their investigation of [Plaintiff] in an arbitrary and unreasonable manner" (id. ¶ 23) and "with deliberate indifference to his rights under the law" as set out in paragraphs 13-23, "treating him differently than other similarly-situated [A]DPS and/or Executive Protection employees for reasons unrelated to a legitimate purpose."  (Id. ¶ 36a.) Count One also alleges that Defendants "caused [Plaintiff] to be investigated and terminated, unreasonably and maliciously," "subject[ed] him to differential treatment which was arbitrary and capricious as set forth in paragraphs 13[-]21," and "arbitrarily and willfully refused to reinstate [Plaintiff] to his position of employment following the action of the State Personnel Board which overturned [Defendants'] wrongful termination of him[.]"  (Id. ¶¶ 36b & 36c.)

Count Two, which comprises three paragraphs, begins as follows:

Defendants have perpetrated, condoned and permitted adverse actions against [Plaintiff] . . . on account of his opposition to their unlawful activities. [Plaintiff] opposed these unlawful discriminatory practices by the Defendants. Defendants retaliated against [Plaintiff] with respect to the terms, conditions and privileges of employment because of his opposition to these unlawful practices in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution of the United States of America for which Defendants are liable.

(Id. ¶ 39.)  In paragraph 40, Plaintiff states that he is entitled to relief "[a]s a result of the . . . conduct set forth" in paragraphs 24, 25, 26, 27, 28, 31, 32, 33 and 34.  (Id. ¶ 40.)  These

paragraphs fairly can be summarized as alleging retaliatory "adverse actions."  (Id.)  These actions include, among others, Colonel Coppage's issuance of a press release accusing Plaintiff of falsifying travel vouchers and Mr. Robinson's refusal to submit the required documentation to the Alabama Retirement Systems, thereby precluding Plaintiff from qualifying for a state retirement, as well as Colonel Coppage's and Mr. Robinson's refusal to comply with the Alabama State Personnel Board's order that Plaintiff be reinstated.  (See id. ¶¶ 25, 27, 31.)  Count Two's final paragraph seeks punitive damages on the basis that Defendants "acted maliciously, willfully, wantonly and recklessly and in conscious disregard of his rights, in retaliating against him for his opposition to their unequal treatment of him[.]"  (Id. ¶ 41.)

Count Three, titled "Section 1985," alleges a conspiracy between "Defendants" to deprive Plaintiff of the "equal protection of the laws" or of "equal privileges and immunities under the laws," or "to impede, hinder, obstruct, or defeat the due course of justice, with the intent to deny [Plaintiff] the equal protection of the laws," or "to injure [Plaintiff] for lawfully enforcing, or attempting to enforce his rights to equal protection of the laws[.]" (Id. ¶ 42.)  The boilerplate language continues in paragraphs 43, 44, 45 and 46.

## II.  DISCUSSION

### A.  Counts One and Two

As grounds for their motion, Colonel Coppage, Captain Wright, Officer Hestor, Sergeant Prescott, Officer Tew and Mr. Robinson argue that they are entitled to dismissal of Counts One and Two because these counts fail to comply with the Eleventh Circuit's

heightened pleading requirements for 42 U.S.C. § 1983 actions brought against defendants who are asserting qualified immunity as a defense.  Defendants are correct that in the Eleventh Circuit, heightened pleading applies to a complaint's § 1983 allegations when challenged upon a Rule 12(b)(6) motion by a defendant who may be entitled to qualified immunity.  See Epps v. Watson, 492 F.3d 1240, 1242-43 (11th Cir. 2007).  In Hayden I, the court set out the standard of review governing Rule 12(b)(6) motions when heightened pleading is at issue, as well as the law governing qualified immunity.  The court applies those standards in the following discussion.

*1.  Count One: Fourteenth Amendment "Class of One" Equal Protection Claim*

The threshold issue, as framed in Hayden I, is whether viewing the facts in the amended complaint as true, the facts provide some detail as to the basis of Plaintiff's Fourteenth Amendment equal protection "class of one" claim so as to comply with the heightened pleading standard.  Urging dismissal of Count One, Defendants argue that Plaintiff has failed to "specifically identify the similarly situated officers" with whom he compares himself,  to allege "discriminatory intent," or to delineate the specific actions taken by each Defendant.  (Doc. No. 19 at 2-3.)  In short, Defendants argue that the amended complaint falls woefully short of satisfying the applicable pleading standards.  Plaintiff responds that the nature of Count One is that Defendants "subject[ed] him to different and unequal treatment in the application of rules, discipline and termination of his employment – treatment that other similarly situated state troopers and executive protection

8

service members were not subjected to by these [D]efendants." (Doc. No. 23 at 3.)  He

contends that his allegations are sufficient to defeat Defendants' motion to dismiss.

Defendants' motion may be resolved on the question of whether there are sufficient

allegations of a similarly-situated comparator.  In at least two equal protection cases arising

in the regulatory field (and, thus, outside the employment discrimination context), the

Eleventh Circuit has applied the qualified immunity defense at the Rule 12(b)(6) stage

where a plaintiff's allegations of a similarly-situated comparator did not comply with the

applicable pleading requirements.  In GJR Investments, Inc. v. County of Escambia, the

plaintiff alleged that the county impermissibly denied it a permit to develop a parcel of land

and, consequently, brought, among other claims, a 42 U.S.C. § 1983 "as applied" equal

protection claim, challenging the county's application of zoning regulations.  See 132 F.3d

1359 (11th Cir. 1998).  Reversing the district court's order denying defendants' motion to

dismiss on qualified immunity grounds, the Eleventh Circuit held that the plaintiff failed to

adequately allege the existence of a similarly-situated comparator, an essential component of

an equal protection claim.  The Eleventh Circuit explained:

> The complaint does not present a single instance in which a similarly situated
> developer was granted a permit; it merely alleges that nameless, faceless
> "other" permit applicants were given better treatment.  Bare allegations that
> "other" applicants, even "all other" applicants, were treated differently do not
> state an equal protection claim; a complaint must attempt to show in some
> fashion that these "other" applicants were situated similarly to the plaintiff.

Id. at 1367-68; see also Kyles v. Garrett, 222 Fed. Appx. 427, 429 (5th Cir. 2007)

(conclusory allegations that "others similarly situated have been granted parole" insufficient

to state an equal protection claim on behalf of a "class of one").

9

GJR Investments recently was cited with approval in Griffin Industries v. Irvin, 496 F.3d 1189 (11th Cir. 2007), as an example of when a "class of one" equal protection claim might not pass scrutiny on a motion to dismiss on qualified immunity grounds. Griffin Indus., 496 F.3d at 1205. Citing GJR Investments, the Griffin Industries court stated, "A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another." Id. Conversely, a "class of one" plaintiff also might fail to state a claim if he "sa[ys] too much," for example, by attaching exhibits to the complaint which negate conclusory allegations of a similarly-situated comparator. Id.

Griffin Industries, which discussed Olech, supra, was decided by the Eleventh Circuit on interlocutory appeal from a Rule 12(b)(6) denial of qualified immunity on a "class of one" equal protection challenge to state regulatory action taken against a chicken rendering plant in East Dublin, Georgia. The Eleventh Circuit held that the defendants were entitled to qualified immunity and reversed the lower court's ruling. Although the "class of one" equal protection claim in Griffin Industries did not arise in the employment discrimination context, it is helpful for identifying the degree of specificity required in the complaint when a plaintiff, who is faced with a qualified immunity defense, relies on a "class of one" equal protection claim.

In Griffin Industries, the court explained that "[i]n a case involving a qualified immunity defense, a plaintiff who fails to allege both elements of a 'class of one' equal protection claim has not met its burden of showing that the defendant's conduct violated a right embodied in the Constitution." Id. at 1202. To satisfy those elements, a plaintiff must

allege that the "defendants intentionally treated [him] differently from others who were similarly situated" and (2) that "there was no rational basis for the disparate treatment." Id.; Olech, 528 U.S. at 564.  One issue in Griffin Industries was whether the plaintiff had "alleged that the defendants intentionally treated it differently from others who were similarly situated" and to resolve the issue the court had to decide "what degree of similarity is required for two entities to be considered 'similarly situated.'"  496 F.3d at 1203.

The Eleventh Circuit held that "[g]overnmental decisionmaking challenged under a 'class of one' equal protection theory must be evaluated in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision."  Id.  The court distinguished Olech on its facts, finding that the governmental regulatory action at issue in that case was "one-dimensional" in that "the only relevant factor was the size of the easement required in return for connection to the municipal water supply," thus, permitting the Court "to analyze the 'similarly situated' requirement succinctly and at a high order of abstraction."  Id.  By contrast, the Griffin Industries court held that "the government's regulatory action was undeniably multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time," which did not permit "a simplistic, post-hoc caricature of the decisionmaking process."  Id.  In the multi-dimensional context, "the 'similarly situated' requirement will be more difficult to establish."  Id. at 1204.

Emphasizing the level of specificity with which the favored class must be defined when the decisionmaking process is multi-dimensional, and of particular relevance to this case, the <u>Griffin Industries</u> court observed that it "has applied a similar standard to private employment discrimination claims brought under the Equal Protection Clause outside the 'class of one' context."  <u>Id.</u>  The Eleventh Circuit explained,

> Similar employees may perform similar functions in different ways.  Such differences often will be relevant to an employer's decisions, and they may lawfully result in different employment outcomes.  Thus, for example, two nurses performing superficially similar roles at a hospital might differ in their job performance or tardiness.  The hospital would clearly find such distinctions relevant in making employment decisions, and it would not violate the Equal Protection Clause if it did, in fact, make different decisions with respect to each employee on this basis.  Accordingly, we have held that an African-American nurse alleging that her hospital employer treated her differently from a similarly situated Caucasian nurse could not simply rely on broad generalities in identifying a comparator.  <u>Knight v. Baptist Hosp. of Miami, Inc.</u>, 330 F.3d 1313, 1316-19 (11th Cir. 2003).  Although both nurses had similar histories of problems with coworkers, the court found it significant that the plaintiff's proposed comparator had a better record when it came to job performance and tardiness.  <u>Id.</u> at 1316-17.  In evaluating this claim, we held that employees must be "similarly situated *in all relevant respects*."  <u>Id.</u> at 1316 (emphasis added, quotation marks and citation omitted).

<u>Id.</u>

Concluding its discussion of the law as to the similarly-situated requirement, the court stated, "We see no reason that a plaintiff in a 'class of one' case should be subjected to a more lenient 'similarly situated' requirement than we have imposed in other contexts."  <u>Id.</u> at 1204-05.  "Adjudging equality necessarily requires comparison, and 'class of one' plaintiffs may (just like other plaintiffs) fairly be required to show their professional comparison is sufficiently apt."  <u>Id.</u> at 1205.

The teachings of <u>Griffin Industries</u> are consistent with the court's pronouncement in <u>Eggleston v. Bieluch</u>, an unpublished opinion in which the Eleventh Circuit "assum[ed] without deciding" that the <u>Olech</u> "class of one" theory applied in the public employment context.  203 Fed. Appx. 257, 264 (11th Cir. 2006).  The <u>Eggleston</u> court held that to satisfy the similarly-situated requirement, the "class of one" plaintiff must show a "satisfactory comparator" who is "'similarly situated in all relevant respects[,]'" and the "'quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'"  <u>Id.</u> (citations omitted).  Because the terminated employee failed to demonstrate that his proposed comparators were "similarly ranked" officers "who both campaigned during the work day while in uniform and publicly criticized [the former sheriff] and the department," as the plaintiff had done, summary judgment was appropriate.  <u>Id.</u> at 265.

Applying the principles from <u>GJR Investments</u>, <u>Griffin Industries</u> and <u>Eggleston</u> to the facts of this case in light of this circuit's heightened pleading requirements, the court finds that it may assume without deciding, as the Eleventh Circuit did in <u>Eggleston</u>, that the <u>Olech</u> "class of one" theory is viable in the public employment discrimination context.  The court may make this assumption because Plaintiff has failed to demonstrate a similarly-situated comparator.  In this case, it is the lack of detail in the amended complaint which is fatal to Plaintiff's burden of pleading a nearly identical comparator.

Concerning Plaintiff's initial selection for the investigation, which is the catalyst for the alleged adverse acts which followed, the amended complaint alleges only that "other

sworn officers of the [A]DPS and Executive Protection Unit were not subjected to investigation and scrutiny of their work hours, travel claims and vehicle usage in the same manner as was [Plaintiff]."  (Am. Compl. ¶ 23.)  Plaintiff defines the class too broadly.  The "sworn officers" are not described by name, by rank, by performance histories or by any other characteristic.  All that is revealed in paragraph 23 is that there are other employees in two different departments who held the same job title as Plaintiff and who were treated differently (presumably because their records were not investigated), but as illustrated in Griffin Industries, *supra*, and Eggleston, *supra*, making a comparison at this general level is too "superficial[]."  Griffins Indus., 496 F.3d at 1204; Eggleston, 203 Fed. Appx. at 265 (pointing out, among other shortcomings, plaintiff's failure to point to a "similarly ranked" employee).  Indeed, paragraph 23 contains exactly the type of general averments rejected in GJR Investments.  To borrow from GJR Investments, "[b]are allegations that "other" [officers], even "all other" [officers], were *treated differently* do not state an equal protection claim."  132 F.3d at 1367 (emphasis added).  The complaint must show that these other officers were situated similarly to Plaintiff "'in all relevant respects.'"  Griffin Indus., 496 F.3d at 1204.

Overall, as relates to Plaintiffs' alleged equal protection violations, the court counted three other references to the phrase "similarly situated," in addition to the one discussed above, (Am. Compl. ¶¶ 22, 23, 36), but these averments are nothing more than boilerplate allegations.  See D'Altilio v. Dover Tp., Civ. Act. No. 1:06-CV-1931, 2007 WL 2845073 (M.D. Pa. Sept. 26, 2007) ("When alleging the existence of individuals outside the protected

class, a plaintiff 'cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief,' and 'bald assertion[s] that other[s] . . . were treated in a dissimilar manner' will not survive dismissal.").  Plaintiff cannot cure his pleading deficiencies by repeating the same boilerplate phrase in different parts of the amended complaint.

The allegations that Defendants expanded the investigation of Plaintiff's records in violation of his equal protection rights provide another example of the amended complaint's pleading deficiencies.  Plaintiff says that his records "contained no more 'discrepancies' than those of other officers who were not included in the expanded investigation" and that he was "not given an opportunity to explain any alleged discrepancies as were other similarly-situated officers prior to the time that he was formally charged with misconduct." (Am. Compl. ¶ 22.)  Defendants argue that these averments are ambiguous as to whether Plaintiff is referring to the three other "officers" who were included in the initial investigation or to all other officers.  (Doc. No. 19 at 2.)  Even assuming that Plaintiff is referring to the three officers who along with Plaintiff were the subject of the initial investigation, Plaintiff's lone use of the word "discrepancies" is not useful in the equal protection context for discerning whether Plaintiff's alleged improprieties in his records are "'nearly identical'" to his proposed comparator's.  Eggleston, 203 Fed. Appx. at 264. Plaintiff fails to specify what he means by "discrepancies," and not even one example is described in the complaint.

15

In a footnote in his brief, Plaintiff essentially offers two excuses for the lack of specificity in the amended complaint as to a "similarly-situated" comparator.  (Doc. No. 23 at 3 n.2.)  First, Plaintiff states that he is relying on the administrative law judge's findings that similarly-situated officers were treated more favorably, but he has not described those findings or attached as an exhibit – to either his brief or his complaint – the administrative law judge's findings for the court's consideration on the motion to dismiss.  See, e.g., Griffin Indus., 496 F.3d at 1199 (on motion to dismiss court may consider, not only facts in the complaint, but also facts contained in exhibits which are attached to the complaint).

Second, Plaintiff adds that "further discovery" is "required" to more "specifically identify all of the individuals, rules and procedures implicated."  (Doc. No. 23 at 3 n.2.)  With this assertion, however, Plaintiff ignores the Supreme Court's instruction that one important purpose of the qualified immunity doctrine is to protect government officials from the burdens of discovery where a plaintiff has failed to plead a violation of a constitutional right.  See Mitchell v. Forsyth, 472 U.S. 511, 525-26 (1985).  Plaintiff has not made a formal motion for discovery, and in his informal statement, merely dropped in a footnote, he does not specify what methods of discovery are needed, explain why he did not ask for discovery prior to his deadline for amending the complaint or otherwise demonstrate why he has been unable to obtain the information sought.  This is not a case where discovery has been stayed.  The parties conducted a Rule 26(f) planning meeting, without objection, and tendered the discovery disclosures required by Rule 26(a)(1).  (See Doc. No. 20); Fed. R. Civ. P. 26.  Yet, no further facts have been offered by Plaintiff in support of his allegations,

notwithstanding that Plaintiff has been on notice for several months that the sufficiency of his pleadings is directly at issue.

In sum, Plaintiff must allege his § 1983 "class of one" equal protection claim with some specificity.  Plaintiff was given an opportunity to correct his pleading deficiencies and satisfy the pleading standard, but his allegations remain conclusory.  The limited information presented by Plaintiff in response both to the court's directives and to Defendants' motion to dismiss exemplifies that the "class of one" equal protection claim is the kind of "insubstantial claim" which is appropriate for dismissal on qualified immunity grounds.  Mitchell, 472 U.S. at 526.  The court finds that Defendants are entitled to qualified immunity under the first step of the qualified immunity analysis because the facts are insufficient to state an equal protection violation and that "there is no necessity for further inquiries concerning qualified immunity."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Defendants' motion to dismiss Count One of the amended complaint, therefore, is due to be granted.  The dismissal will be with prejudice.

### 2. Count Two:  First Amendment Retaliation Claim

Count Two is a First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983 against Defendants in their individual capacities.  Defendants reassert their argument that Plaintiff has failed to plead his First Amendment claim with the requisite degree of specificity because he does not identify or describe the "protected speech" which was the catalyst for the retaliation.  (Doc. No. 19 at 3.)  In response, Plaintiff argues that he

17

sufficiently alleges facts showing that Defendants' "actions against him were undertaken due to his political affiliation" or, alternatively, Defendants' "perception of his political affiliation." (Doc. No. 23 at 4 (citing Compl. ¶ 21).) Plaintiff relies upon Branti v. Finkel, 445 U.S. 507 (1980), and Rutan v. Republican Party, 497 U.S. 62, 64-65 (1990), which are First Amendment political patronage cases.

Plaintiff's reliance on Branti and Rutan is perplexing because Count Two, which comprises three paragraphs, does not allege First Amendment retaliation based upon Plaintiff's political affiliation, but rather alleges that Defendants retaliated against Plaintiff based upon "his opposition to their unequal treatment of him." (Am. Compl. ¶ 39.) Plaintiff repeats his First Amendment theory two more times in paragraph 39, averring that he "*opposed* these unlawful discriminatory practices by the Defendants," and that "Defendants retaliated against [him] . . . because of his *opposition* to these unlawful practices," and again in paragraph 41. (See id. ¶¶ 39, 41 (emphasis added).) Plaintiff does not allege, or even hint, that he is contending in Count Two that the enumerated retaliatory acts in paragraph 40 were taken against him because of his political affiliation; there simply is no mention of

"political affiliation" in Count Two.[2]  Also, the phrase "freedom of association" – the First Amendment right at issue in <u>Branti</u>/<u>Rutan</u> – is not cited in Count Two or anywhere else in the amended complaint.  The problem here is not that the averments are conclusory as to the First Amendment theory proffered in Plaintiff's brief, but that the averments are non-existent.  Just as this court "may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity," <u>GJR Investments</u>, 132 F.3d at 1369, Plaintiff cannot use his brief to supplement the allegations in the complaint.  <u>See Payne v. Ryder Sys. Long Term Disability Plan</u>, 173 F.R.D. 537, 540 (M.D. Fla. 1997) ("Courts have held that a plaintiff cannot amend a complaint through statements in a brief.").  In the words of the <u>GJR Investments</u> court, which rejected the plaintiffs' attempt to cure pleading defects by adding a new factual premise in a brief, Plaintiff's argument presents "a tortured reading of the complaint."  132 F.3d at 1368.

Assuming that Plaintiff intended to rely on the First Amendment's free speech clause as the basis for his theory that he was retaliated against for "oppos[ing] the[] unlawful discriminatory practices by Defendants," (Am. Compl. ¶ 39), a theory which Plaintiff

_____

[2] The court notes that in his brief, Plaintiff cites paragraph 21 as his sole factual support for his contention that the alleged retaliation was directed toward his political affiliation.  Notably, paragraph 21 is not referenced or otherwise alluded to in the three paragraphs which comprise Count Two.  Notwithstanding paragraph 21's obvious absence from Count Two and the failure of Count Two to allude to the factual theory now proffered in his brief, Plaintiff fails to explain how his allegations in paragraph 21 state a <u>Branti</u>/<u>Rutan</u> claim.  The court also notes that nowhere in his amended complaint does Plaintiff expressly identify his political affiliation.  The closest suggestion as to his political affiliation comes from the fact that he served as a security officer for a Republican governor.

essentially renounces in his brief, his First Amendment retaliation claim is not in any better shape than it was in his original complaint. In the first instance, the First Amendment retaliation claim does not allege, even in conclusory terms, which provision of the First Amendment Plaintiff is invoking.[3] Only the "First Amendment" is cited. This count arguably could be dismissed on this ground alone. See GJR Investments, Inc., 132 F.3d at 1367 (holding that complaint "fail[ed] to state an equal protection claim, even without the additional hurdle of the heightened pleading standard. The words "equal protection" do not appear *anywhere* in the complaint.") (emphasis in original). There, however, are other pleading deficiencies.

To survive the motion to dismiss, Plaintiff must allege facts demonstrating that he spoke on a matter of public concern which requires consideration of the "content, form, and context" of the speech, but the sole word Plaintiff uses to describe his speech is "opposition." Connick v. Myers, 461 U.S. 138, 146-48 (1983); Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007). As the court expressly pointed out in Hayden I, the word "opposition" is a legal conclusion. It is vague and conclusory and of no value in determining whether Plaintiff engaged in speech which is protected by the First Amendment. Notwithstanding that the court permitted Plaintiff to replead this count, Plaintiff still has not identified the "opposition" against which Defendants allegedly

---

[3] The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

20

retaliated.  In Count Two, he does not define "opposition" or specifically state which facts,

if any, in other parts of his complaint comprise the "opposition."  Plaintiff fails to identify

facts from which the court can determine whether Plaintiff voiced his opposition in a

manner which is protected by the First Amendment's free speech clause.  Similarly,

Plaintiff's allegations concerning Defendants' "unlawful discriminatory activities" are

equally undefined and too conclusory to satisfy the applicable pleading requirements.

Although not specifically raised by Defendants as a ground for dismissal of Count

Two, the court observes that, as it explained in Hayden I, Plaintiff must specify the acts of

each Defendant which resulted in the alleged constitutional violation.  See Maldonado v.

Snead, 168 Fed. Appx. 373, 380-83 (11th Cir. 2006).  Plaintiff incorporates by reference into

paragraph 40 the alleged retaliatory "adverse actions" upon which he relies, but the only acts

set out in the incorporated paragraphs are acts taken by Colonel Coppage and Mr. Robinson.

(See, e.g., Am. Compl. ¶¶ 25, 27, 31.)  No other Defendant is implicated by the averments in

Count Two.  Hence, even assuming that Plaintiff's averments otherwise were sufficient to

state a First Amendment retaliation claim, Plaintiff's failure to allege that any Defendant,

other than Colonel Coppage and Mr. Robinson, participated in any alleged retaliatory

conduct would preclude Plaintiff from proceeding against Captain Wright, Officer Hestor,

Sergeant Prescott and Officer Tew on his First Amendment retaliation claim.

The court reiterates that it forewarned Plaintiff that if he did not provide specificity to

remedy the conclusory allegations, the court would entertain and grant a motion to dismiss,

if filed.  A motion to dismiss was filed on qualified immunity grounds, and it will be granted as to Count Two.  The dismissal will be with prejudice.


B.  <u>Count Three</u>

Defendants also move for dismissal of the 42 U.S.C. § 1985 conspiracy claim in Count Three.  (Doc. No. 18 at 1.)  Defendants focus on the absence of allegations revealing any class-based animus on the part of Defendants.  (Doc. No. 19 at 3.)  Plaintiff responds that his conspiracy claim is predicated upon Defendants' conspiracy to discriminate against him based upon "his political affiliation and/or activity," in violation of 42 U.S.C. § 1985(3).[4]  (<u>Id.</u> at 5.)

Qualified immunity is not available to a government official sued in his individual capacity under 42 U.S.C. § 1985(3).  <u>Johnson v. City of Fort Lauderdale</u>, 126 F.3d 1372, 1379-80 (11th Cir. 1997); <u>Burrell v. Board of Trustees of Ga. Military College</u>, 970 F.2d 785, 793-94 (11th Cir. 1992).  The heightened pleading rules, therefore, do not govern the determination of whether the complaint sufficiently alleges a § 1985(3) claim.  Even under the liberal pleading rules of Rule 8(a), though, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  <u>Bell Atl. Corp. v.</u>

---

[4] No subsection is delineated in Count Three, but in his brief Plaintiff cites subsection (3) of § 1985.  (Doc. No. 23 at 4-5.)

Twombly, ___ U.S. ___, ___, 127 S.Ct. 1955, 1964-65 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In Burrell, the Eleventh Circuit recited the elements of a cause of action under § 1985(3).  See 970 F.2d at 793-94.  The second element "requires a showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action[,]'" and § 1985(3) claims "often stand or fall on the plaintiff's ability to establish the specific type of discriminatory animus behind the conspirators' actions."  Id. at 794 (citation omitted).

As a whole, Count Three recites bare legal allegations with no suggestion of a single supporting fact; the allegations are boilerplate.  (See Am. Compl. ¶¶ 42-46.)  Specifically, as to § 1985(3)'s second element, Plaintiff pleads in generic terminology that Defendants "discriminate[d]" against him, but he has not identified the type of alleged discriminatory animus.  (Am. Compl. ¶ 44.)  Assuming without deciding that § 1985(3) provides a remedy for individuals injured by conspiracies motivated by discriminatory animus directed toward their political affiliation, there are no allegations, not even conclusory ones, of a deprivation of a constitutional right on the basis of political affiliation.  On these allegations, the court finds that Plaintiff's failure to allege an essential element of his § 1985(3) claim is a failure to comply with the liberal pleadings requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  Accordingly, Defendants' motion to dismiss Count Three is due to be granted.  The dismissal will be with prejudice.

C.  Counts Four, Five and Six

Having dismissed the federal claims, the court in its discretion declines supplemental jurisdiction over the remaining state-law claims in Counts Four, Five and Six.  See 28 U.S.C. § 1367(c)(3); McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1227 (11th Cir. 2002).  The state-law claims are due to be remanded back to the state court from which this case was removed.  See 28 U.S.C. § 1367(c)(3); Halford v. Deer Valley Home Builders, Inc., Civ. Act. No. 2:07cv180-ID, 2007 WL 1229339, *5 (M.D. Ala. 2007) (discussing the district court's authority pursuant to 28 U.S.C. § 1367(c)(3) to remand supplemental state-law claims to state court when the federal claim which supported removal is dismissed).

**III.  ORDER**

Accordingly, it is CONSIDERED and ORDERED that Defendants' motion to dismiss the amended complaint be and the same is hereby GRANTED as to Counts One, Two and Three and that Counts One, Two and Three of the amended complaint are hereby DISMISSED with prejudice.

It is further CONSIDERED and ORDERED that the state-law claims in Counts Four, Five and Six be and the same are hereby remanded to the Circuit Court of Montgomery County, Alabama, pursuant to 28 U.S.C. § 1367(c)(3).  A judgment in accordance with this memorandum opinion and order shall be entered separately.

Done this 4th day of February, 2008.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE